**BUTLER MANUFACTURING COMPANY, INC., et al.; Plaintiffs,**

v.

**AMERICOLD CORPORATION, et al., Defendants.**

**No. 92–2118–JWL.**

United States District Court, D. Kansas.

Dec. 10, 1993.

Thomas R. Buchanan, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Michael G. Norris, Payne & Jones, Chtd., Overland Park, KS, for plaintiffs.

Paul H. Niewald, Niewald, Waldeck & Brown, Douglas R. Richmond, Robert G. Rooney, Armstrong, Teasdale, Schlafly & Davis, James S. Kreamer, Baker, Sterchi & Cowden, Mary M. Kenney, William H. Sanders, Floyd R. Finch, Jr., Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, James M. Yeretsky, Patrick J. Doran, Niewald, Waldeck & Brown, Overland Park, KS, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

*I. Introduction*

This consolidated action arises out of a fire that occurred at an underground warehouse facility owned and operated by defendants Americold Corporation and Americold Services Corporation ("Americold"). The plaintiffs in the various consolidated cases consist of corporations who had stored foodstuffs, records and other goods which were damaged in the fire and various insurers of those goods. The matter is currently before the court on Americold's motion for summary judgment or, in the alternative, for partial summary judgment, against plaintiffs Hartford Casualty Insurance Company and QHC, Inc. (Doc. #10 in case no. 93–2067–JWL) and defendant Safeway's motion for summary judgment against plaintiffs Hartford Casualty Insurance Company and QHC, Inc. (Doc. #16 in case no. 93–2067–JWL).

The vast majority of plaintiffs stored goods in Americold's warehouse pursuant to record storage contracts or warehouse receipts executed between plaintiffs and Americold. The court has issued previous orders ruling on the enforceability of contractual damage limi-

tation provisions in those factual situations.[1] However, the factual situation involving the present parties is different. Safeway leased space in Americold's warehouse pursuant to a leasehold contract executed between Americold and Safeway. Plaintiff QHC, Inc. ("QHC")[2] then negotiated with Safeway to store goods in the space Safeway had leased from Americold. QHC stored goods in Safeway's leased space pursuant to warehouse receipts executed between Safeway and QHC.

QHC's cause of action asserts negligence, warehouseman liability under the Kansas Uniform Commercial Code ("UCC")[3] and bailment claims against both Americold and Safeway. For the reasons set forth below, the court finds that Americold's motion for summary judgment should be granted as to QHC's UCC and bailment claims. The liability arguments regarding QHC's negligence claim are denied as premature, without prejudice to their re-assertion in a subsequent motion. Safeway's motion for summary judgment is granted.

## II. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## III. Discussion

### A. Americold's Motion for Summary Judgment

In its motion, Americold seeks summary judgment on QHC's UCC and bailment

---

1. The court's order ruling on the enforceability of the damage limitation provisions contained in the Americold record storage contracts is dated September 9, 1993. The court's order ruling on the enforceability of the damage limitation provisions contained in the Americold warehouse receipts is dated September 20, 1993.

2. In this action, plaintiff Hartford seeks to recover amounts it paid to its insured, QHC, for product lost or damaged by the fire and QHC seeks to

recover its deductible. The court will refer to the plaintiffs collectively as QHC throughout this memorandum and order.

3. QHC's UCC claim is based on K.S.A. §§ 84–7–204 and 84–7–403(1). K.S.A. § 84–7–204 sets out the applicable standard of care for a warehouseman. K.S.A. § 84–7–403(1) deals with a warehouseman's duty to deliver goods which have been entrusted to him.

claims. Americold contends that QHC's bailment claim is not applicable because no bailment relationship arose between QHC and Americold. Americold further contends QHC's UCC claim is not applicable because Americold is not a "warehouseman"[4] with respect to the goods stored by QHC due to the fact that Americold had no business relationship with QHC and never issued warehouse receipts to it for the storage of goods. Americold contends that QHC's only valid bailment and UCC claims are against Safeway, who was the party that issued warehouse receipts for the storage of QHC's property inside the space Safeway had leased from Americold. Americold contends that Safeway had possession of and complete control over its leased premises, and that QHC's goods were delivered to Safeway and at all times were under the custody and control of Safeway.

In its response, QHC concedes that the viability of its bailment and UCC claims against Americold is contingent on whether Americold exercised custody, possession or control of QHC's goods. However, QHC contends that Americold has failed to carry its burden, for summary judgment purposes, of showing that Safeway was in exclusive control of the goods. QHC thus argues that a question of material fact remains which prevents granting Americold's summary judgment motion.

■ The court does not agree with QHC's contention that Americold has failed to properly demonstrate, for summary judgment purposes, that Safeway had exclusive control of the goods. A copy of the leasehold contract between Safeway and Americold is included in Americold's master statement of undisputed facts, which was filed contemporaneously with its motion. The leasehold contract contains no restrictions on Safeway's possession or control of the leased premises. The provision in the leasehold contract relating to Americold's right of entry is a standard provision which merely indicates that Americold may enter the premises at reasonable hours to examine them and do anything that Americold may be required to do under the terms of the leasehold contract. There are no provisions in the leasehold contract that indicate Americold would have any right to exercise any possession or control over any goods contained in the leased property.

The court believes that the preceding evidence presented by Americold was sufficient to show an absence of evidence to support QHC's claims, namely that Americold took possession or control over QHC's property. The burden then fell upon QHC to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). QHC has failed to come forward with any evidence whatsoever indicating that Americold ever took possession or had control over QHC's goods. Accordingly, the court finds that Americold is entitled to summary judgment on QHC's bailment and UCC claims.

The remainder of Americold's motion deals with liability arguments related to QHC's negligence claim. At a status conference conducted September 2, 1992, the court informed the parties of its intention that all liability related summary judgment questions be resolved in the second wave of dispositive motions, for which the court had set a December 1, 1993 deadline. The court indicated at the status conference that plaintiffs need not respond to any non-liability assertions in defendants' present motions and that defendants should reassert those arguments in the dispositive motions to be filed by the December 1, 1993 deadline. Consequently, the liability arguments contained Americold's motion are denied as premature, without prejudice to their re-assertion in a subsequent motion.

### B. Safeway's Motion for Summary Judgment

In its motion for summary judgment, Safeway claims it is entitled to summary judgment on QHC's claims because the undisput-

---

4. K.S.A. § 84–7–102(h) defines a warehouseman as "a person engaged in the business of storing goods for hire."

ed material facts show that QHC failed, within the limits set forth in the applicable warehouse receipts, to timely file claims of loss for its damaged product with Safeway or to timely file the instant cause of action. In addition, Safeway contends that even if QHC were not time-barred, it is contractually prohibited from recovering any damages from Safeway because the product was stored at QHC's risk of loss from fire or other causes beyond the control of Safeway.[5]

Sections 12(a) and 12(d) of the warehouse receipts executed by Safeway and QHC provide as follows:

(a) The warehouseman shall not be liable for any loss or injury to goods stored however caused unless such loss or injury resulted from the failure by the warehouseman to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances and warehouseman is not liable for damages which could not have been avoided by the exercise of such care.

(d) All goods under the responsibility of the warehouse company are at owner's risk of loss or damage caused by fire, wind, water, sprinkler leakage, rats, mice, vermin, leakage, or providential causes, or by enemies of Government, or mobs, or breakable goods not properly packed, or from any cause beyond the control of the warehouseman. The responsibility of the warehouseman is defined by the Laws of the State. The warehouseman will assume no responsibility for concealed damage, leakage, variation in weights, or for loss in weight by reason of defective or insufficient containers, or delays, or whether occurring while goods are in storage or are being handled, nor for failure to detect and remedy same, not for loss or delays caused by civil commotions.

Safeway contends that the damage limitation provisions contained in Section 12 of the warehouse receipts specifically allocate the risk of loss from fire beyond the control of Safeway to the owner of the goods, QHC. Safeway further contends that it is uncontroverted that the fire which damaged QHC's goods occurred in an area over which Safeway had no control and to which Safeway did not have access.[6] Therefore, Safeway argues that because the damages to QHC's goods were caused by a fire which was beyond Safeway's control, the provisions contained in Section 12 of the warehouse receipts relieve Safeway of liability for any of the damages in question.

In its response, QHC contends that the court's previous orders in this case dated September 1, 1993 and September 20, 1993 resolve against Safeway the limitation of damages issue presented by Safeway in this matter. The court does not agree that those orders have the dispositive effect urged by QHC.

The court's orders of September 1, 1993 and September 20, 1993 dealt with the question of whether damage limitation provisions contained in the record storage contracts and warehouse receipts issued by Americold impermissibly limited Americold's liability for breaches of its duty of care in violation of K.S.A. § 84–7–204. In the court's September 1, 1993 order, the court held that the damage limitation provisions contained in Americold's record storage contracts was unenforceable because it violated the restrictions on a warehouseman's ability to limit damages for its own negligence contained in K.S.A. § 84–7–204. In the court's September 20, 1993 order, the court held that plain-

---

**5.** The court finds that disputed questions of material fact would prevent the granting of Safeway's motion on the timeliness issue. Because the court finds that Safeway's motion should be granted based on the damage limitation language contained in Section 12 of the warehouse receipts, the court finds it unnecessary to set forth in detail its reasoning on the timeliness issue.

**6.** In its statement of facts in support of its motion for summary judgment, Safeway sets forth that any damages or loss to plaintiffs' product was caused as the result of the fire which occurred in Portal A of the Americold facility in an area over which Safeway had no control and to which Safeway did not have access, and that Safeway did not have any control over or any responsibility for efforts to extinguish or suppress the fire. Plaintiffs do not controvert these facts in their response, nor do plaintiffs set forth any additional uncontroverted facts which would tend to show that Safeway breached its duty of care under K.S.A. § 84–7–204.

tiffs' recovery for damages caused by Americold's ordinary negligence would be limited as provided in section 9(e)(4) of the warehouse receipts issued by Americold, which was the only provision the court found complied the K.S.A. § 84–7–204.

■ The issue ruled on by the court in its earlier orders, that being the ability of a warehouseman to limit liability for his own negligence, does not come into play in the present dispute. It is uncontroverted that the damage to QHC's goods occurred due to a fire which occurred on premises over which Safeway had no control. There is no evidence that Safeway breached its duty of care under K.S.A. § 84–7–204 in any manner regarding the fire which damaged plaintiffs' goods. Thus, rather than the question of the validity of damage limitation provisions purporting to limit a warehouseman's liability for his own negligence that was before the court in its previous orders, the question before the court on the present motion is the validity of a damage limitation provision in a warehouse receipt that purports to limit a warehouseman's liability for a fire that occurs through no fault of the warehouseman.

The court addressed this issue in its earlier order dated September 20, 1993. In that order the court stated:

> In Section 9(a) [of the Americold Earth Elements warehouse receipt], defendants disclaim liability for any damages caused to goods by a variety of circumstances for which neither party would be at fault, including shrinkage, evaporation, war, riot and various natural disasters commonly referred to as acts of God. Such potential causes of damage to goods are inherent in any goods storage situation and could occur through the fault of neither party to the goods storage contract. The court finds no provisions in Article 7 that would prevent the parties from allocating the risk in such situations, and the court believes that the defendants' disclaimer of liability under such scenarios complies with Article 7. More important to our analysis here, however, is the further language contained in Section 9(a), which clearly states that defendants are not attempting to exculpate themselves from liability for damages caused by defendants' "failure to exercise such care in regards to the goods as a reasonably careful person would exercise under like circumstances." Thus, there is no attempt by defendants in Section 9(a) to disclaim liability for their duty of care set forth in K.S.A. § 84–7–204.

In the present case, it is undisputed that the fire which damaged QHC's goods was beyond Safeway's control and no breach of Safeway's duty of care regarding the fire is implicated. The court finds no provisions in Article 7 that would prevent the parties from allocating the risk in situations where damages result from situations beyond the control of warehousemen, as the parties have done in Section 12 of the warehouse receipts. Additionally, the court has reviewed relevant Kansas authorities and concludes that the damage limitation provision contained in Section 12 of the warehouse receipts, which allocates all risk of damage to QHC in the event of losses that occur beyond Safeway's control, is valid and enforceable under Kansas law and not violative of any public policy. *See Talley v. Skelly Oil Co.*, 199 Kan. 767, 433 P.2d 425 (1967); *Anderson v. Union Pacific R.R.*, 14 Kan.App.2d 342, 347, 790 P.2d 438 (1990).

The court finds that the damage limitation provisions contained in Section 12 of the Safeway/QHC warehouse receipts, which allocate to QHC the risk of loss by any cause that occurs beyond the control of Safeway, are valid and enforceable. Because it is undisputed by the parties that the fire which damaged plaintiff's goods was an event that occurred beyond Safeway's control, the court finds that plaintiffs' claims against Safeway for damage to their property are contractually barred by Section 12 of the warehouse receipts. Accordingly, Safeway's motion for summary judgment is granted.

*IV. Conclusion*

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** Americold's motion for summary judgment or, in the alternative, for partial summary judgment (Doc. # 10 in case no. 93–2067–JWL) is granted in part and denied in part. The motion is granted as to plaintiffs' bailment and UCC claims. The

liability arguments as to plaintiffs' negligence claim are denied as premature, without prejudice to their re-assertion in a subsequent motion.

**IT IS FURTHER ORDERED THAT** defendant Safeway's motion for summary judgement (Doc. # 16 in case no. 93–2067–JWL) is granted.

**IT IS SO ORDERED.**