No. 19,357.

THE GRIFFITHS GRAIN COMPANY, *Appellee*, v. THE
ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY,
*Appellant*.

SYLLABUS BY THE COURT.

LEASE—*Part of Right of Way for Grain Elevator—Provision
Exempting Railroad Company from Liability for Negligence
—Provision Valid*. A railway company leased to the plaintiff,
at a rental of $6 per annum, a strip of ground on its right of
way to be used in the erection of a grain elevator. The lease
contained the provision that the lessee should assume all risk
of loss, damage or destruction to the elevator buildings or
contents from causes incident to or arising from the move-
ment of locomotives, trains of cars, misplaced switches, or in
any other respect from the operation of the railroad, whether
the result of negligence of the railway company or its em-
ployees. *Held*, that the clause exempting the railway company
from liability is not in contravention of public policy, and
is valid.

Appeal from Nemaha district court; WILLIAM I.
STUART, judge. Opinion filed March 6, 1915. Reversed.

*R. M. Emery*, of Seneca, *Robert A. Brown*, and
*Lucian J. Eastin*, both of St. Joseph, Mo., for the
appellant.

*Abijah Wells*, and *Ira K. Wells*, both of Seneca, for
the appellee.

The opinion of the court was delivered by

PORTER, J.: Plaintiff sued to recover for damages to
a grain elevator caused by negligence of the defendant
in operating its trains. The elevator stood on the right
of way of defendant and a freight car got off the track
and was pushed through the elevator building. The
jury returned a verdict in favor of the plaintiff, and
the defendant appeals.

The answer alleged that defendant had leased to the
plaintiff, at a yearly rental of $6, a portion of its right

of way for the purpose of constructing thereon an elevator; that the lease contained an express provision that the lessee should assume all risk of loss, damage, or destruction to the elevator buildings or contents from causes incident to or arising from the movement of locomotives, trains of cars, misplaced switches, or in any other respect from the operation of the railroad, whether the same resulted from negligence of the railway company or its employees. The district court sustained a demurrer to this portion of the answer, and the defendant claims the ruling was error.

The sole question in the case is whether or not the provision of the lease exempting the railway company from liability is valid. The plaintiff seeks to avoid the effect of the provision on the ground that it is against public policy, and argues that the erection of elevators along its right of way is something which becomes necessary to every railway in order that it may furnish adequate facilities to the public; that if the plaintiff had not made the lease and erected the elevator, the company would have been required to do so in order to furnish facilities to shippers of grain. The defendant's contention is that this clause of the lease in no manner relieved the railway company from any public duty; that one of the principal considerations for the license to build and maintain the warehouse on its right of way was the provision exempting the company from such damages; and that the public had and has no interest whatever in the question which of the parties to the lease should be held responsible for such damages.

The question can not be considered a new one. Leases of this character are being made every day by common carriers throughout the country. In 3 Elliott on Railroads, 2d ed., § 1236, it is said:

"But where property is placed on a railway right of way by virtue of a contract in which the owner releases the railroad company from any and all liability

on account of fire, and the property is afterwards destroyed by fire negligently set by the railway company the contract is not void and the company can not be held liable."

In *Hartford Ins. Co. v. Chicago &c. Railway,* 175 U. S. 91, 44 L. Ed. 84, the defendant leased a tract of land, being part of its depot grounds, for the purpose of erecting and maintaining a cold-storage warehouse, the lessee paying an annual rent of $5, in advance, and upon the express condition releasing the railway company from all liability or damage by reason of injury to or destruction of any building placed thereon by fire, or from damage done by trains or cars running off the track. The supreme court of the United States said in that case:

"No one had the right to put a warehouse or other building upon the land of the railroad corporation without its consent; and the corporation was under no obligation to the public, or to the partnership, to permit the latter to do so." (p. 99.)

The court held that the principal consideration in the contract for the license to build and maintain the warehouse on this strip of land was the stipulation exempting the company from liability to the licensee for any such damages, and the public had no interest in the question which of the parties to the contract should be responsible for such damages to property placed on the land of the corporation. The court distinguishes a case of this kind from that where a railroad company transfers its entire property and franchises to another corporation and seeks to relieve itself from the duties imposed upon it by its charter. Another case in point is *Griswold v. Ill. Cent. R'y Co.,* 90 Iowa, 265, 57 N. W. 843. In the opinion it was said:

"Much as the public may have been interested in the convenience of such a place of business, it had no interest as to who should carry the hazard incident to that property being located as it was." (p. 272.)

It was held, therefore, that a provision in a contract of this character for indemnity is valid.

The only Kansas case at all like this is *Railroad Co. v. Blaker,* 68 Kan. 244, 75 Pac. 71, where the court without deciding that the rule referred to in the foregoing authorities should be followed, held that such an exemption "was not a license, however, negligently to set out fires which might burn the elevator and pass over the right of way, destroying other property." (p. 248.) There was a similar provision in the lease by which Blaker & Company assumed the risk of destruction by fire of property on the right of way, and the decision merely went so far as to hold that the company would still be liable for damages to other property belonging to the lessee to which the fire spread after it had started in the leased premises. The question here was not expressly decided.

No case has been cited and we have found none where similar exemptions have been declared in contravention of public policy, and we are constrained to adopt the reasoning of the supreme court of the United States and the Iowa court, and to hold that the provision in this lease can not be said to be void on the ground of public policy.

Section 6998 of the General Statutes of 1909, making railroads in this state liable for all damages to personal property arising from any neglect on the part of the company is invoked by the plaintiff. That section would apply were it not for the stipulation in the lease exempting the company from such liability, and the only thing we have to determine is whether the contract exempting the company is contrary to public policy. The cases of *K. P. Rly. Co. v. Peavey,* 29 Kan. 169, *Railway Co. v. Fronk,* 74 Kan. 519, 87 Pac. 698, and *Sewell v. Railway Co.,* 78 Kan. 16, 96 Pac. 1007, are not in point, for the reason that they all involved liability for injuries to employees, and it was held that because of the interest which the state has in the lives, health

38—94 KAN.

and safety of its citizens, the state may intervene in such contracts in the interest of the public welfare, and that contracts with an employee exempting the company from liability for injuries resulting from the neglect of the company's agents is void as against public policy; so that after all we have only the original question involved in this case: Does the clause of exemption in this contract contravene public policy?

Our conclusion is that it does not, and therefore the judgment will be reversed and the cause remanded with directions to overrule the demurrer and to enter judgment for the defendant.

JOHNSTON, C. J., dissenting.