## WESTRE v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. October 18, 1924.)

No. 6505.

1. **Railroads** ☞73(4)—**Provision of contract releasing railroad company from liability for negligent injury to property of lessee held valid.**

A provision of a contract by which defendant railroad company leased to plaintiff an elevator site on its right of way, releasing defendant from liability for injury to plaintiff's property caused by operation of its railroad trains or cars, through negligence or otherwise, *held* valid, and effective, except for a wanton or willful injury.

2. **Negligence** ☞112 — **Allegation of "gross negligence" held without legal significance.**

Where, to entitle plaintiff to recover for negligence of defendant, it must have been willful or wanton, an allegation in the complaint characterizing it as gross is without legal significance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gross Negligence.]

3. **Negligence** ☞11—**"Willful and wanton negligence" implies intent to do act, but not to inflict resulting injury.**

A charge of "willful and wanton negligence" does not signify degrees of negligence, but the words have reference to the intent, which must

have been to do the wrongful act, but not to inflict the resulting injury; otherwise, it would be a willful and not a negligent injury.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Willful and Wanton.]

**4. Railroads ⊚⟶222(5)—Evidence held not to sustain charge of willful and wanton negligence as to property injured.**

Evidence *held* not to sustain an allegation that an injury to plaintiff's elevator, caused by a car of defendant, which was derailed while being pushed along an adjacent side track, was the result of willful and wanton negligence.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action at law by Henry Westre against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

E. A. Burgess, of Sioux City, Iowa (A. B. Fairbank, of Sioux Falls, S. D., and F. E. Gill, of Sioux City, Iowa, on the brief), for plaintiff in error.

Ed. L. Grantham, of Aberdeen, S. D. (H. O. Hepperle, of Aberdeen, S. D., on the brief), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge. The plaintiff owned and operated a grain elevator at Meckling, South Dakota, situated on defendant's right of way and near to its side track. There were other elevators, coal sheds and stockyards along this track. While switching cars on to the side track for the stockyards on the night of December 23, 1920, one of them was derailed, pushed against the elevator and wrecked it. For this plaintiff sued to recover damages. The court directed a verdict for defendant at the close of plaintiff's evidence, and that ruling is assigned as error.

[1] Plaintiff set up in his complaint a lease-contract between himself and defendant by which he was given the right to have and maintain his elevator on defendant's right of way. One of the provisions and conditions of that agreement is that lessee (plaintiff) released the railway company from all liability for injuries to or destruction of property of the lessee situate upon the leased premises, caused by operation of defendant's railroad, engines and cars, through negligence or otherwise. That the railway company was released from liability in accordance with the terms of the contract for negligent operation of its trains, cars and engines over the side track, is not controverted by counsel for plaintiff. Insurance

Co. v. Railway Co., 175 U. S. 91, 20 S. Ct. 33, 44 L. Ed. 84; Id., 70 Fed. 201, 17 C. C. A. 62, 30 L. R. A. 193; Checkley v. Railway Co., 257 Ill. 491, 100 N. E. 942, 44 L. R. A. (N. S.) 1127, Ann. Cas. 1914A, 1202; Stephens v. Railway Co., 109 Cal. 86, 41 Pac. 783, 29 L. R. A. 751, 50 Am. St. Rep. 17; Insurance Co. v. Railway Co., 134 Mo. App. 48, 114 S. W. 546; Railway Co. v. McClure, 9 N. D. 73, 81 N. W. 52, 47 L. R. A. 149; Griffiths Grain Co. v. Railway Co., 94 Kan. 590, 146 Pac. 1134. But it is argued that the contract did not release the railway company from damages for injuries caused by defendant's "gross, wanton and wilful negligence nor from the consequences of its own heedless, reckless conduct, because such a contract would be void as against public policy." And this states the kind of case that plaintiff sought to make out in his complaint and proof. Counsel for defendant freely admits that the contract would not protect it against injuries which it wilfully inflicted on the plaintiff, but says there was no evidence offered to sustain such a claim.

And so the complaint alleges that the space between the rails of the side track, and for a considerable distance on either side thereof, was filled solidly with ice substantially level with the top of the rails, that defendant's agents and employés knew or should have known that fact, and that while the side track was in that condition defendant, with gross, wilful and wanton negligence switched or attempted to switch on to the said side track certain freight cars, and by reason of said condition of the track said cars left or jumped from the rails of said track and collided with plaintiff's elevator causing great damage thereto. It is observed that the complaint does not charge that the derailment of the car and the consequent wrecking of the elevator were intentional and wilful acts, but that they were the results of the defendant's negligence. The difference between the two is apparent, and is further demonstrated by the fact that as to the latter contributory negligence would be a proper defense, while as to the former it would not. As said by Shearman and Redfield on Negligence (5th Ed.) §§ 7, 19:

"The last element of negligence, and that which distinguishes it from fraud or other wilful injury, is the absence of any distinct intention to produce the precise damage to the plaintiff, which actually follows as a result of the negligence. If such an intention is alleged in the complaint, the action is based upon wilful injury and can only be

sustained upon that ground. If it is not so alleged, evidence of an actual intent to cause the damage which is the basis of the action is inadmissible."

[2] The negligence imputed to the defendant is alleged to have been gross, wilful and wanton. The word "gross," as here used, is without legal significance. It is a mere epithet. The Steamboat New World v. King, 16 How. 469, 14 L. Ed. 1019; Railroad Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374; Purple v. Union Pacific R. Co., 114 Fed. 123, 130, 51 C. C. A. 564, 57 L. R. A. 700; Gordon Fireproof Warehouse & Van Co. v. Hines (C. C. A.) 272 Fed. 604; Oregon Co. v. Roe, 176 Fed. 715, 718, 100 C. C. A. 269; Railroad Co. v. Lockwood, 17 Wall. 357, 382, 383, 21 L. Ed. 627. We are not unmindful that in some jurisdictions the word has been accepted, though not given a definite meaning. It is said to fall short of wilful and intentional wrong, and manifesting a smaller amount of watchfulness than the circumstances require of a person of ordinary prudence. Altman v. Aronson, 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185. In Railroad Co. v. Lockwood, supra, the Supreme Court, after noting the attempt by counsel to distinguish between gross and ordinary negligence, said:

"In each case, the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands; and hence it is more strictly accurate perhaps to call it simply 'negligence.'"

[3] The attempt to classify negligence into degrees has been found confusing rather than helpful. 21 Am. & Eng. Ency. Law (2d Ed.) 459. A charge of "wilful and wanton" negligence is not equivalent to a charge that the injuries were wilfully inflicted, and if the facts show wilful conduct from which injurious results may be reasonably anticipated, though not intended, it has been held that defendant must respond in damages as for wanton and wilful negligence. Those words do not signify degrees of negligence, but have reference to the intent with which the act complained of was done. There is an intention to do the wrongful act but not to inflict the resulting injuries; and against liability therefor the wrongdoer cannot shield himself by contract. Railroad Co. v. Mohney, 252 U. S. 152, 40 S. Ct. 287, 64 L. Ed. 502, 9 A. L. R. 496; McCree v. Davis (C. C. A.) 280 Fed. 959; Davis v. McCree (C. C. A.) 299 Fed. 142; Greenwich Ins. Co. v. Railway Co., 112 Ky. 598, 66 S. W. 411, 67 S. W. 16, 56 L. R. A. 477, 99 Am. St. Rep. 313; Helme v. Great Western Co., 43 Cal. App. 416, 185 Pac. 510.

[4] When the trial came on plaintiff failed to prove that there was solidly frozen ice between the rails of the side track. He did prove that an unpaved highway running north and south crossed the side track and main track just west of the elevator, that these tracks were planked between the rails, leaving the usual space between the planking and the rails for the flanges of the car wheels, that snow had fallen from time to time, that for several days before the occurrence the snow would thaw during the day and there would be freezing temperature at night, that the plank crossing over the side track was about fifty feet west of the elevator and that during the day wagons and automobiles would drop mud on this crossing, and on either side of the crossing, causing the space between the rails to be lower than the approach on either side, that the crossing was a few inches lower than the main track and that water drained down on the side track toward the east from the west, that the mud brought on to the crossing, mixed with some water and snow, filled up the space between the rails and the planking and froze on the night of December 23d. Six or seven cars were being pushed in on the side track from the west to be set at the stockyards. When the forward car had gotten half-way or more over the plank crossing its forward truck left the rails and it was pushed on against the elevator wrecking it. The rear truck remained on the track, as did the following cars. The evidence tended to establish that the derailment was caused by the frozen mud that had dropped into the space for the flanges. There was also proof that defendant's station agent at Meckling had been spoken to about the crossing by two witnesses. He had been told that it looked dangerous to the public passing over it and that there might be an accident or wreck there. Mud had been dropped on the outer side of each rail, the distances from them is not shown; and one of the witnesses testified that the space between the rails was lower than the approach from either side, so that vehicles in passing over went down on the track and up on the other side. The talks had with the station agent are the basis for the contention that the derailment of the car was wilful. The testimony as to these talks convinces that what was then in mind and called to the agent's attention was a claimed inconvenience to the public in passing over the crossing in wagons and automobiles. No one would likely suspect that

a railway car would be derailed because of mud and snow and water filling the spaces for the flanges and freezing, nor was there any proof that the train-men knew of these talks with the agent; and no inference can be indulged that those in charge of the train knew or had cause to suspect that the car would leave the track as it was being pushed over the crossing on that account. Mud and snow on a railway track, even when frozen, are not usually permanent obstructions to the passage of trains. The weight of a car is ordinarily sufficient to hold the flanges in place. Assuming that the derailment was a negligent act, it was an act for which the defendant was exempted from damages by the lease-contract and the plaintiff could not recover; unless he further show that the car was wilfully derailed. That was the case he made in his complaint and which he wholly failed to establish. These talks with the agent, even if imputed to the defendant and its train-men, contained nothing that advised them that an attempt to pass a car over the crossing would result in its derailment. They contain no notice of facts that made the derailment a wilful act. To have constituted wilful and wanton negligence the known facts must have been such as to induce the belief that the car might be derailed on the crossing, and no such facts appear in this case to have come to the knowledge of any one.

Affirmed.