(790 P.2d 438)
No. 64,375

Tom Anderson, d/b/a Mustang Corral, *Appellee*, v. The Union Pacific Railroad Company, *Appellant*.

Opinion filed April 13, 1990.

*Michael B. Buser* and *Roy P. Farwell*, of North Kansas City, Missouri, for the appellant.

*Jeffrey M. Murrill*, of Dennis E. Mitchell Law Offices, of Kansas City, for the appellee.

Before Abbott, C.J., Terry L. Bullock, District Judge, assigned, and Nelson E. Toburen, District Judge, assigned.

Bullock, J.: In this action, The Union Pacific Railroad Company (Union Pacific) appeals a summary judgment damage award of $10,912 in favor of Tom Anderson for property damage and attorney fees arising out of a March 27, 1988, fire.

In the court below, the parties stipulated to the following facts. On March 27, 1988, a railroad engine and train owned by Union Pacific negligently caused a fire which incinerated property adjacent to the railroad tracks. On October 24, 1984, Anderson had leased a 330- by 150-foot parcel of commercial property adjacent to the railroad tracks from Union Pacific for an annual rental of $644. He stored several automobiles on the property. The fire destroyed twenty vehicles with a total value of $7,600.

Section 13 of the lease included the following provisions:

"It is understood by the parties hereto that the Premises are in dangerous proximity to the tracks of the Lessor, and that by reason thereof there will be constant danger of injury and damage by fire, and the Lessee accepts this lease subject to such danger.

"It is therefore agreed, as one of the material considerations for this Lease and without which the same would not be granted by the Lessor, that the

Lessee assume all risk of loss or destruction of or damage to buildings or contents on the Premises, and of or to other property thereon . . . where such loss, damage, destruction, injury, or death of persons is occasioned by fire caused by, or resulting from, the operation of the railroad of the Lessor, whether such fire be the result of defective engines, or of negligence on the part of the Lessor or of negligence or misconduct on the part of any officer, servant, or employee of the Lessor, or otherwise, and the Lessee hereby agrees to indemnify and hold harmless and defend the Lessor . . . against and from all liability . . . arising out of or by reason of any such loss, damage, destruction, injury, or death of persons . . . ."

Although Anderson questioned some of the terms of the lease in the pre-lease negotiations, Union Pacific would not alter any of them.

After the fire, Anderson filed suit to recover for damage to his personal property. Cross-motions for summary judgment were filed. Union Pacific moved for summary judgment on the basis of section 13 of the lease. Anderson defended that the provision was unenforceable and moved for summary judgment on the stipulated facts. The court granted Anderson's motion and denied Union Pacific's motion, holding that the lease provision violated K.S.A. 66-234 and was contrary to public policy and, thus, was unenforceable.

Union Pacific timely appeals the entry of summary judgment.

The trial court determined that section 13 of the lease violated K.S.A. 66-234 and Kansas public policy. Our scope of review is de novo, inasmuch as the sole issue is the legal effect of the lease contract. *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492, 774 P.2d 355 (1989).

Kansas follows the general principle that "competent parties may make contracts on their own terms, provided they are neither illegal nor contrary to public policy." 13 Kan. App. 2d at 492. Anderson, of course, contends that section 13 of the lease is both illegal and contrary to public policy.

Anderson first contends the waiver of liability provision of section 13 of the lease violates the clear language of K.S.A. 66-234.

K.S.A. 66-234 was enacted in 1870 and provides: "Railroads in this state shall be liable for all damages done to person or property, when done in consequence of any neglect on the part of the railroad companies." Anderson argues this language, especially the legislature's use of the word "shall," indicates that the

legislature intended railroads to be liable for their negligence without exception. However, as early as 1873, the Kansas Supreme Court indicated K.S.A. 66-234 was not a clear, unambiguous statute but instead raised "many interesting questions" concerning contributory negligence and assumption of risk. *St. Joseph & D. C. R. Co. v. Grover*, 11 Kan. *302, *306 (1873).

In 1915 the Kansas Supreme Court was called upon to determine the validity of a waiver of liability provision under the statute. *Grain Co. v. Railway Co.*, 94 Kan. 590, 146 Pac. 1134 (1915). In *Grain Co.*, the court held that a hold harmless provision in a railroad lease was not "void on the ground of public policy." 94 Kan. at 593. See generally Annot., 14 A.L.R.3d 446. Anderson attempts to distinguish *Grain Co.* from the instant case by arguing that in *Grain Co.* the railroad and grain company had a business relationship, that the grain company lease was on the railroad right of way, and that *Grain Co.* did not deal with damage caused by fire. In our view, none of these distinctions mandate a different conclusion.

The lease in *Grain Co.* allowed the Griffiths Grain Company to store grain in elevators built on the railroad right of way. The lease contained a waiver of liability provision for all damages caused by the railroad's negligence. There was no express language in the lease that required the Griffiths Grain Company to ship any grain on the railroad. Ultimately, a train derailment damaged the silos and the grain company brought suit. The Kansas Supreme Court expressly rejected the argument that the waiver of liability was void as a matter of public policy. 94 Kan. at 593. Thus, the legal arguments advanced in *Grain Co.* are indistinguishable from the arguments in the instant case, and the only factual distinction is in the manifestation of the railroad's negligence. Neither K.S.A. 66-234 nor the court's opinion in *Grain Co.* makes this distinction relevant.

An indemnification clause in a railroad contract was also upheld in *Riddle Quarries, Inc. v. Thompson*, 177 Kan. 307, 279 P.2d 266 (1955). In *Riddle Quarries*, the plaintiff had stored property along a railroad right-of-way pursuant to a license which contained both a hold harmless clause and an express assumption of risk clause. The court upheld the clauses, holding that, when the public is not involved, the railroad may make such contracts. 177

Kan. at 312. *Riddle Quarries* thus distinguished between the railroad's duty to the public as a common carrier and its freedom of contract in non-public operations. In the instant case, the public was not involved; instead, the relationship was that of landlord/tenant in a commercial lease.

In private contracts, exculpatory clauses are upheld unless the agreement is contrary to public policy or is illegal. *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 681, 732 P.2d 1260 (1987). Thus, in *Corral*, an exculpatory clause in a fire alarm installation/maintenance agreement was enforced in the absence of any indication the plaintiff could not understand the terms of the contract or was at a business disadvantage. 240 Kan. at 683-84. Similarly, in *Talley v. Skelly Oil Co.*, 199 Kan. 767, 433 P.2d 425 (1967), an exculpatory clause in a commercial lease was upheld where the clause neither violated a Kansas statute nor was contrary to public policy.

Because section 13 of the lease does not violate K.S.A. 66-234, as interpreted by our Supreme Court, Anderson's reliance upon *Hunter v. American Rentals*, 189 Kan. 615, 371 P.2d 131 (1962), is misplaced. *Hunter* dealt with a trailer and trailer hitch rental contract which attempted to disclaim liability for the rental company's negligence. The provision was held void as contrary to public policy because the trailer did not have an adequate safety hitch, a violation of a Kansas statute. 189 Kan. at 617. Unlike *Hunter*, the lease in the case at bar did not violate a Kansas statute. Therefore, section 13 of the lease should not be held contrary to public policy on the basis of a statutory violation.

Anderson next contends that public policy disfavors waivers of liability. It is true that such waivers are strictly construed against the party who drafted the waiver of liability. *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 329, 582 P.2d 1111 (1978). However, even a strict construction of section 13 of the lease does not assist Anderson. The type of damage caused by the fire is precisely the risk Anderson expressly assumed in section 13. Therefore, section 13 cannot be held contrary to public policy on this basis.

Anderson also argues that section 13 of the lease is "overbroad" and argues that it could conceivably cover the "entire state of Kansas." Anderson cites no cases supporting the proposition that

such overbreadth is sufficient grounds for declaring section 13 void, and, in all events, that situation is not before us under the facts of this case.

Furthermore, in *Thirlwell v. Railway Co.*, 108 Kan. 700, 196 Pac. 1068 (1921), the court dealt with a lease provision calling for assumption of risk of damages on property " 'near said track.' " 108 Kan. at 701. The plaintiff there argued that " 'near said track' " could extend a hundred miles. The Kansas Supreme Court rejected the argument and upheld the validity of the clause. 108 Kan. at 702. The language in section 13 is more specific than the language in *Thirlwell*. By its terms, it applies only to property in "proximity to the Premises when connected with or incidental to the occupation" of the leased premises.

Finally, Anderson contends the contract was an adhesion contract and, as such, should be construed against Union Pacific. An adhesion contract is a "[s]tandardized contract form offered to consumers of goods and services on essentially 'take it or leave it' basis without affording consumer realistic opportunity to bargain and under such conditions that consumer cannot obtain desired product or services except by acquiescing in form contract." Black's Law Dictionary 38 (5th ed. 1979). We also note the rule that contracts limiting liability will not be enforced unless the limitation is " 'fairly and honestly negotiated and understandingly entered into.' " *Belger*, 224 Kan. at 330 (quoting 17 Am. Jur. 2d, Contracts § 188).

In *Belger*, the court determined that a waiver of liability provision which appeared in small type on the reverse of a preprinted crane rental form was unenforceable. Anderson argues that the fact that the lease was on a standardized form with "boilerplate type" language prepared by the railroad should make section 13 unenforceable. However, the totality of the circumstances surrounding an exculpatory clause in a contract may be considered to determine whether it is enforceable. *Belger*, 224 Kan. at 331. In the instant case, the record does not indicate that Anderson did not understand the provisions in the lease. Indeed, Anderson admits that he questioned some of the provisions.

Moreover, characterizing the language as boilerplate is inaccurate. The contract contains eight single-sided, single-spaced typed pages with topic headings in the left margin. The topic

heading for section 13, "Fire Damage Release," was clear and concise. Additionally, the record does not indicate that Anderson was under any time pressures or was unable to find other comparable commercial property. Instead, the record indicates that Anderson rented 49,500 square feet of commercial property for $644 a year. Thus, the totality of the circumstances indicate that Anderson found the rental price attractive and agreed to lease the property even though he questioned some of the provisions of the lease. In our judgment, the contract was fairly and honestly negotiated and understandingly entered into and was, therefore, not an adhesion contract.

Union Pacific advances a single public policy argument which favors enforcement of section 13 of the lease. Union Pacific notes that railroads have relied on the holding in *Grain Co.*, 94 Kan. 590, for over 65 years and have entered into contracts accordingly. Affirming the trial court would result in overruling *Grain Co.* and its progeny and would undermine all of the contracts entered into in reliance upon *Grain Co.*, a result not lightly to be entered into. We concur.

Reversed. Judgment entered for Union Pacific for costs on appeal.