**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TERRY NEUSTROM,

Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant-Third-Party Plaintiff-Appellee,

v.

ASPLUNDH TREE EXPERT COMPANY,

Third-Party Defendant-Appellant.

Nos. 96-3266, 97-3077, 97-3209

---

**ORDER**

**Filed November 30, 1998**

---

Before **PORFILIO** and **EBEL**, Circuit Judges, and **BRETT**,[*] District Judge.

---

[*]Honorable Thomas R. Brett, Senior District Court Judge, Northern District of Oklahoma, sitting by designation.

Having considered the petition for rehearing and the response thereto, it is hereby ORDERED that the petition for rehearing is DENIED.

The court has determined, however, that the opinion issued on September 21, 1998, should be AMENDED to include the following sentence at the end of the decision:

> The district court's order awarding prejudgment interest on attorneys' fees, costs, and expenses which were liquidated in amount as of October 1, 1995, is AFFIRMED.

The opinion is otherwise unchanged. A copy of the amended version is attached to this order.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 21 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TERRY NEUSTROM,

Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant-Third-Party Plaintiff-Appellee,

v.

ASPLUNDH TREE EXPERT COMPANY,

Third-Party Defendant-Appellant.

Nos. 96-3266, 97-3077, 97-3209

---

**Appeal from the United States District Court**
**for the D. Kansas**
**(D.C. No. 94-1024-MLB)**

---

Patrick E. McGrath, of Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kansas, for Appellant Asplundh Tree Expert Company.

Ronald W. Fairchild, of Fairchild, Haney & Buck Topeka, Kansas, for Appellee Union Pacific Railroad Company.

---

Before **PORFILIO** and **EBEL**, Circuit Judges, and **BRETT,**[*] District Judge.

---

**EBEL**, Circuit Judge.

---

In this contractual indemnification case, appellant Asplundh Tree Expert Company ("Asplundh") appeals the district court's grant of summary judgment to Union Pacific Railroad Company ("Union Pacific") on Union Pacific's claim that it was indemnified by Asplundh for injuries sustained by Union Pacific employee Terry Neustrom ("Neustrom") and the district court's order for Asplundh to reimburse Union Pacific for its settlement with Neustrom. Asplundh also appeals the district court's order that Asplundh pay pre-judgment interest, Union Pacific's costs, and attorneys' fees. We affirm all of the district court's rulings with the exception of the grant of attorneys' fees, which we vacate and remand for a finding of reasonableness.

## Background

In 1987, Union Pacific and Asplundh entered into a contract under which Asplundh agreed to spray chemical defoliants along Union Pacific's "Central Region" railroad lines. Under the agreement, Union Pacific was required to

---

[*]Honorable Thomas R. Brett, Senior District Court Judge, Northern District of Oklahoma, sitting by designation.

provide a spraying train as well as "personnel to supervise the movement of contract spray equipment over its lines." The actual spraying of defoliant was conducted by Asplundh personnel from a spraying car owned by Asplundh, employing equipment operated and supervised by Asplundh personnel.

On June 27, 1991, defoliant spraying was scheduled along the main line tracks between Junction City and Salina, Kansas. The only person on the spraying train that day licensed to spray chemicals was Asplundh spray supervisor Charles Shetron ("Shetron"). In order for the spray train to leave the Junction City train yard and make its way onto the main track, it was necessary for someone to line and reline some track switches. Neustrom, a brakeman employed by Union Pacific, was assigned this job. After switching the tracks, Neustrom approached the train to get back on it, only to find himself engulfed in defoliant. He experienced burning in his throat, tightness in his chest, and difficulty breathing. Neustrom was subsequently diagnosed as suffering from Reactive Airway Dysfunction Syndrome (RADS) and underwent a lengthy series of treatments for that disorder.

Neustrom sued Union Pacific under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 et seq., for failing to provide him with a safe working environment. In his complaint, Neustrom alleged that Union Pacific and Asplundh negligently caused his injuries, and asked for one million dollars in

damages. After Asplundh refused Union Pacific's tender to take over defense of the suit, Union Pacific filed a Third Party Complaint against Asplundh based on the indemnity provision of the contract. That provision read, in its entirety:

> The Contractor [Asplundh] shall indemnify and hold harmless the Railroad Company [Union Pacific], its affiliates, their officers, agents, employees, against and from any and all liability, loss, damage, claims, demands, costs and expenses of whatsoever nature, including court costs and attorneys' fees, arising from or growing out of any injury to or death of persons whomsoever (including officers, agents and employees of the Railroad Company, of the Contractor and of any subcontractor, as well as other persons) or loss of or damage to property whatsoever (including property of or in custody of the Railroad Company, the Contractor or any subcontractor as well as other property). The right to indemnify shall accrue when such injury, death, loss or damage occurs from any cause and is associated in whole or in part with the work performed under this agreement, a breach of the agreement or the failure to observe the health and safety provisions of the agreement or any activity or omission arising out of performance or nonperformance of this agreement. However, the Contractor shall not indemnify the Railroad Company when the loss is caused by the sole negligence of the Railroad Company.
>
> To the extent that it lawfully may do so, the Contractor waives any and all defenses under workers' compensation or industrial insurance acts to so indemnify the Railroad Company.

Union Pacific moved for summary judgment against Asplundh, seeking indemnification from Asplundh for Neustrom's claims against Union Pacific under the contract. The district court granted Union Pacific's motion. Thereafter, Union Pacific entered into settlement negotiations with Neustrom and tendered defense of Neustrom's claim to Asplundh; Asplundh failed to take up that defense. Union Pacific settled with Neustrom for $65,000, and filed a Motion to

Assess Judgment against Asplundh with the district court. The district court found in favor of Union Pacific, and assessed Asplundh the entire $65,000, plus Union Pacific's attorneys' fees and costs, as well as prejudgment interest on both the settlement amount and Union Pacific's attorneys' fees and costs incurred up to October 1, 1995, for a total of $177,182.96.

In this consolidated appeal, Asplundh appeals the district court's judgments against it and moves to certify two questions to the Supreme Court of Kansas: (1) whether as a matter of Kansas law Asplundh agreed to indemnify Union Pacific for Union Pacific's joint negligence; and (2) if so, whether such an agreement violates Kansas public policy and is void on that ground.

## Discussion

### I. The Indemnification Agreement

#### A. Jurisdiction, Standard of Review, and Choice of Law

The district court had jurisdiction over Neustrom's FELA claim under 28 U.S.C. § 1331 (federal question jurisdiction) and over the contractual indemnification issue under 28 U.S.C. § 1367 (supplemental jurisdiction). This court has jurisdiction under 28 U.S.C. § 1291. We review grants of summary judgment de novo. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "[T]he movant bears the burden of showing the absence of a genuine issue of

material fact . . . . An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." Id. (quotation omitted). The determination of a contractual term is a question of law that this court reviews de novo. See Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114, 1120 (10th Cir. 1991). The district court noted that neither party mentioned the issue of choice of law question explicitly, but because both parties cited to Kansas law the court "assum[ed] that there is no dispute that Kansas law applies." Because the parties proceed on the assumption that Kansas substantive contract law applies, we apply that law without further analysis. See Missouri Pacific R.R. Co. v. Kansas Gas & Elec. Co., 862 F.2d 796, 798 n.1 (10th Cir. 1988).

**B. The Contractual Language**

Asplundh argues that the language of this indemnification provision is unclear and over broad, and thus cannot support an interpretation that Asplundh agreed to indemnify Union Pacific for its own negligence. Union Pacific responds that the language in the indemnification provision is capable of only one reading: that Asplundh agreed to indemnify Union Pacific for all claims arising out of the spraying operations, including those arising in part from Union Pacific's own negligence, excepting only those claims based solely on Union Pacific's negligence.

Under Kansas law, agreements in which one party agrees to indemnify another for the indemnitee's own negligence are disfavored and as such must be expressed in "clear and unequivocal language." Zenda Grain & Supply Co. v. Farmland Indus., Inc., 894 P.2d 881, 887 (Kan. Ct. App. 1995) (quotation omitted). "'The general rule is that private contracts exculpating one from the consequences of his own acts are looked upon with disfavor by the courts and will be enforced only when there is no vast disparity in the bargaining power between the parties and the intention to do so is expressed in clear and unequivocal language.'" Belger Cartage Serv., Inc. v. Holland Const. Co., 582 P.2d 1111, 1119 (Kan. 1978) (quoting Kansas City Power & Light Co. v. United Tel. Co., 458 F.2d 177, 179 (10th Cir. 1972)). Thus, we must first decide if there was a vast disparity in bargaining power between Asplundh and Union Pacific; if there was not, then we must ask if the indemnification clause at issue here clearly expressed the intention of the parties that Asplundh would indemnify Union Pacific for its own negligence.

"The policy of the law in general is to permit mentally competent parties to arrange their own contracts and fashion their own remedies where no fraud or overreaching is practiced. Contracts freely arrived at and fairly made are favorites of the law." Kansas City Structural Steel Co. v. L.G. Barcus & Sons, Inc., 535 P.2d 419, 424 (Kan. 1975). As for the claim of unequal bargaining

power, the Kansas Supreme Court has suggested that so long as "[n]one of the parties . . . involved were neophytes or babes in the brambles of the business world" the court will eschew declaring voluntarily entered-into indemnification agreements void. Id. Such is the case here. This was not Asplundh's first railroad spraying contract, nor is there any evidence that Asplundh was a babe in the woods of the railroad defoliant business. See generally Knowles v. Burlington Northern R.R. Co. v. Asplundh Tree Expert Co., 856 P.2d 1352 (Kan. Ct. App. 1993). Because there is no evidence of a vast disparity between Asplundh and Union Pacific in terms of sophistication or bargaining power, we reject Asplundh's claim that the indemnification clause is void on the ground of unequal bargaining power.

Next we turn to the question of whether the indemnification clause in this contract evinced, in clear and unequivocal language, the intent of the parties that Asplundh indemnify Union Pacific for its own negligence. Although under Kansas law parties may contract for indemnification against their own negligence, "broad and seemingly all-inclusive language" is not sufficient to overcome the judicial disfavor of such agreements. Zenda Grain, 894 P.2d at 887 (quotation omitted); see Johnson v. Board of County Comm'rs, 913 P.2d 119, 136 (Kan. 1996). Instead, the Kansas Courts of Appeals have advised those drafting indemnification clauses specifically to address the issue of the indemnitees'

negligence if they wish the clause to apply to negligent acts of the indemnitee. See Zenda Grain, 894 P.2d at 888; Elite Professionals, Inc. v. Carrier Corp., 827 P.2d 1195, 1203 (Kan. Ct. App. 1992). The contractual language cited with approval in Zenda Grain and Elite Professionals may be found in Corral v. Rollins Protective Services Co., 732 P.2d 1260 (Kan. 1987). That clause read:

> "The parties agree that if loss or damage should result from the failure of performance or operation or from defective performance or operation or from improper installation or servicing of the [Rollins] System, that Rollins' liability, if any, for the loss or damage thus sustained shall be limited . . . and that the provisions of this paragraph shall apply if loss or damage . . . results . . . from negligence . . . of Rollins, its agents or employees."

Id. at 1263. In Zenda Grain the Court of Appeals exhorted "[t]hose drafting hold harmless clauses in the future" to look to the language of Corral "and follow it carefully." See Zenda Grain, 894 P.2d at 888.

Here we have a contractual indemnification clause that specifically addresses Union Pacific's negligence. Asplundh argues that because the term negligence in this clause is modified by the adjective "sole," it remains ambiguous whether Asplundh agreed to indemnify Union Pacific for any other kind of negligence. As a result, Asplundh claims, we must hold that the indemnification clause fails to evince, in clear and unequivocal terms, an intent on Asplundh's part to indemnify Union Pacific for joint negligence. We decline Asplundh's invitation to do so.

Under Kansas law:

> Unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. The intent of the parties is determined from the four corners of an unambiguous instrument, harmonizing the language therein if possible. Ambiguity does not appear . . . [unless it is] genuinely uncertain which of two or more meanings is the proper meaning.

Hall v. JFW, Inc., 893 P.2d 837, 840 (Kan. Ct. App. 1995) (internal citations omitted). Asplundh's suggested reading does not harmonize the language contained in the indemnification clause. Asplundh agreed to hold Union Pacific harmless "against and from any and all liability, loss, damages, claims, demands, costs and expenses of whatsoever nature" arising from injury or death to any person caused by the spraying operations, with the exception of Union Pacific's "sole negligence." The "sole negligence" provision carves out from the otherwise inclusive indemnification the lone circumstance where the indemnity clause does not apply, and that is when the injury or death was caused solely by Union Pacific's negligence. This shows that the parties clearly focused on negligence, including Union Pacific's negligence. The "sole negligence" phrase directly implies that all other kinds of negligence, e.g., joint negligence, are included within the meaning of the phrase "any and all liability, loss, damages, claims, demands, costs and expenses of whatsoever nature." Any other reading would

make the “sole negligence” language of the clause meaningless and superfluous.[1] See Restatement (Second) of Contracts § 203(a) (1979) (“[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms [of an agreement] is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.”) (quoted in United States v. Brye, 146 F.3d 1207, 1211 (10th Cir. 1998)).

Our holding in this case is supported by our opinion in Titan Steel Corp. v. Walton, 365 F.2d 542 (10th Cir. 1966) (applying Utah law). In that case Titan agreed “to indemnify, protect and defend [the other parties] against all claims, suits, losses, damages and costs . . . on account of such injury or damage, except when caused by the sole negligence of [the other parties].” Id. at 548. This court found that this provision “clearly and unequivocally expresses the intention of the parties” that the indemnitees would be protected against their own joint

---

[1] Asplundh attempts to argue that Union Pacific’s liability to Neustrom was not negligence, but rather “statutory liability under FELA.” This argument avails Aplundh little, because a FELA action is an action for negligence. See 45 U.S.C. § 51 (“Every common carrier by railroad while engaging in [interstate commerce] . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death *resulting in whole or in part from the negligence* of any of the officers, agents, or employees of such carrier, or *by reason of any defect or insufficiency, due to its negligence,* in its . . . equipment.”) (emphasis added); Metro-North Commuter R.R. Co. v. Buckley, 117 S. Ct. 2113, 2116 (1997) (characterizing FELA as “a statute that permits a railroad worker to recover for an ‘injury . . . resulting . . . from’ his employer’s negligence”) (quoting 45 U.S.C. § 51).

negligence. Id. at 549. We are persuaded by our decision in Titan Steel to hold that the nearly identical language of the indemnity provision before us satisfies the requirement that the intention of the parties be expressed in clear and unequivocal terms as required by Kansas law.[2] Thus, we hold that the indemnification clause before us here evinces an unequivocal intent on the part of Asplundh to indemnify Union Pacific for its own joint negligence.

**C. Kansas public policy**

Asplundh next argues that even if we find that the indemnification provision does evince a clear intent that Asplundh indemnify Union Pacific for its own joint negligence, we should declare this provision void because it violates Kansas public policy as embodied in Kansas statutes governing railroads. The main thrust of Asplundh's argument is that allowing a common carrier to enjoy indemnification by third parties for its own negligence is tantamount to giving the carrier a license to kill or maim, and that because of this the Kansas legislature has enacted a statute preventing just such an eventuality.

Asplundh directs our attention to Kan. Stat. Ann. § 66-234, which reads:

---

[2] Asplundh argues that the "clear and unequivocal term" requirement may have different meanings in different jurisdictions. However, Asplundh does not provide any authority for the proposition that the requirement differs between the states of Kansas and Utah. To the contrary, we have previously applied the general standards articulated in Titan Steel to a question involving an indemnification clause in a contract governed by Kansas law. See Kansas City Power & Light Co. v. United Tel. Co., 458 F.2d 177, 179 (10th Cir. 1972).

> **Liability for negligence.** Railroads in this state shall be liable for all damages done to person or property, when done in consequence of any neglect on the part of the railroad companies.

Asplundh insists that under this statute railroads cannot indemnify themselves for their own negligence, and relies upon Sewell v. Atchison, T& S. F. Ry. Co., 96 P. 1007 (Kan. 1908), for support. However, Sewell does not stand for the proposition that a railroad may not contractually obtain indemnification for its liability for negligently injuring any person or property. Rather, Sewell, allowed the enforcement of a contract between a railroad and an express company in which the express company assumed the risk of injuries to its employees incurred while riding the railroad's trains and agreed to hold the railroad harmless. See id. at 1009-10.

In addition to Sewell, Asplundh cites two other older Kansas cases, namely Kansas Pacific Ry. Co. v. Peavey, 8 P. 780 (Kan. 1882), and Atchison, T. & S.F. Ry. Co. v. Fronk, 87 P. 698 (Kan. 1906), in which the Kansas Supreme Court held that railroads' attempts to indemnify themselves against their own negligence were void for public policy reasons. However, these two cases deal with the railroads' attempts to force employees to indemnify the railroads against their own negligence. Indeed, as the Kansas Supreme Court later noted:

> The cases of Kansas Pacific Ry. Co. v. Peavey, . . . [and] Railway Co. v. Fronk, . . . are not in point, for the reason that they all involved liability for injuries to employés, and it was held that because of the interest which the state has in the lives, health, and

> safety of its citizens, the state may intervene in such contracts in the interest of the public welfare, and that contracts *with an employé exempting the company from liability for injuries* resulting from the neglect of the company's agents is void as against public policy . . . .

Griffiths Grain Co. v. St. Joseph & G.I. Ry. Co., 146 P. 1134, 1135 (Kan. 1915) (emphasis added). Thus, none of the "old" Kansas cases cited by Asplundh support the proposition that a railroad may never contract for third party indemnification for its own negligence.[3]

Indeed, in Anderson v. Union Pacific R.R. Co., 790 P.2d 438, 440 (Kan. Ct. App. 1990), the Kansas Court of Appeals specifically rejected the notion that public policy as embodied in § 66-234 prevents railroads from contracting with third parties for indemnity for their own negligence. Asplundh argues that because Anderson focused on property damage and not on personal injury, that holding does not apply to the facts of this case. What Asplundh in essence asks us to do is to hold that third-party indemnification of railroads for negligent property damage does not violate the statute, whereas indemnification for personal injury does. This distinction flies in the face of § 66-234, where both property damage and personal damage are mentioned in the statute, within one

[3] Asplundh also quotes from two passages in American Jurisprudence as support for its position that railroads and other common carriers may not contract their negligence liability away to third parties. See Am. Jur. 2d Indemnity § 10 (1995); 14 Am. Jur. 2d Carriers § 554 (1964). However, American Jurisprudence is a general compilation of cases. In this case, we are guided by specific Kansas case law.

word of one another. Therefore, we reject Asplundh's argument that the indemnification clause in its contract with Union Pacific is violative of § 66-234 and Kansas public policy.[4]

## D. Certification of Asplundh's Questions

Asplundh urges us to certify to the Supreme Court of Kansas the questions of whether the indemnification clause here clearly and unequivocally expressed the parties' intent for Asplundh to indemnify Union Pacific for its own negligence, and whether such an indemnification of a railroad violates Kansas public policy. It is well-established law in this circuit that "[c]ertification is

---

[4] Asplundh also cites to the case of Hunter v. American Rentals, 371 P.2d 131 (Kan. 1962), for the proposition that a rental company may not indemnify itself by private contract for its own negligence. The indemnification agreement in Hunter can readily be distinguished from the one before us, for in Hunter the rental company sought to require its own customer, an unsophisticated private consumer, to indemnify the company from the rental company's own negligence. See id. at 132. The Supreme Court of Kansas found that such indemnification was void because it violated American Rental's duty of care to the public. See id. at 133. Allowing a rental company to enter into an indemnification agreement with its own customer would mean that the customer "paid to place himself at the mercy of and subject to the negligence and carelessness of the defendant's agent in connecting the trailer to his automobile," with no recourse to ensure that the rental company complied with its duty toward the customer and the public. Id. at 134. By contrast, under the contract before us here, employees who find themselves injured by Union Pacific's sole or joint negligence may recover from Union Pacific directly, with the only difference that if the injuries are caused by Union Pacific's joint negligence, Union Pacific may seek indemnification from Asplundh for its liability. Because the indemnification clause before us does not allow all negligent actors to ignore their duty to the plaintiff and the public, this case is sufficiently removed from that of Hunter to render Hunter inapplicable here.

particularly appropriate where the legal question at issue is novel and the applicable state law is unsettled." Allstate Ins. Co. v. Brown, 920 F.2d 664, 667 (10th Cir. 1990). Asplundh does not point to any case law that would indicate that the legal concept of clear and unequivocal expression of an intent to indemnify a party for its own negligence is unsettled in Kansas. Moreover, as discussed above, it is clear that under Kansas law railroads may contract for third-party indemnification from liability for their own negligence. Therefore, we need not certify these questions to the Supreme Court of Kansas in order to correctly apply the law of that state.

## II. Summary Judgment

Asplundh next argues that even assuming that the indemnification agreement was clear and unequivocal and not violative of Kansas public policy, the district court nonetheless erred in granting Union Pacific summary judgment because controverted material facts remained. The material facts that Asplundh alleges were controverted at the time of the court's ruling include: (1) whether Union Pacific was solely negligent in causing Neustrom's injury and therefore not entitled to indemnification under the contract; (2) whether Neustrom was actually injured by the spray; and (3) whether Neustrom was completely at fault for being in the vicinity of the spray.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Furthermore, the non-movant has a burden of doing "'more than simply show[ing] there is some metaphysical doubt as to the material facts.'" Ulissey v. Shvartsman, 61 F.3d 805, 808 (10th Cir. 1995) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Rather, "the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir. 1993) (quoting Anderson, 477 U.S. at 251-52).

The indemnification agreement before us covers "any and all liability, loss, damages, claims, demands, costs and expenses of whatsoever nature" excepting, of course, when the claim is based upon Union Pacific's sole negligence. It is uncontested that Neustrom brought a claim against Union Pacific, and that Union Pacific chose to settle that claim after offering the defense of that claim to Asplundh. Thus, the only issue we must address is whether a jury could have found that Union Pacific was solely negligent in causing Neustrom to be sprayed with defoliant.

In its brief on appeal, Asplundh asserts that "all persons" involved in the spraying operation "were responsible for being attentive and watching for potential safety hazards." Accordingly, Asplundh appears to concede that both Union Pacific and Asplundh personnel had a duty to watch the tracks and remain on the lookout for bystanding personnel. Moreover, Asplundh's spray operator Shetron testified that he knew there would be a brakeman lining the switch who would have to be positioned near the train. Asplundh admits that its personnel were the only ones on the train who were licensed to handle and apply these chemical defoliants, and that its employees had complete control over the "act of pulling the trigger to distribute the herbicides." Given the control enjoyed by Asplundh personnel over the release of the chemical spray and the affirmative duty of those personnel to remain on the lookout for bystanders, all of which was freely admitted to this court by Asplundh, if a reasonable jury could find negligence at all, it could not have found Union Pacific *solely* liable for the spraying of Neustrom. Summary judgment on this issue was proper.

## III. The Settlement

After obtaining summary judgment on the issue of indemnification, Union Pacific settled with Neustrom for the sum of $65,000, and the district court granted Union Pacific's Motion to Assess Judgment against Asplundh. Asplundh

claims that because (1) it had no right or duty under the provisions of the indemnification agreement to defend the suit, and (2) the settlement was not reasonable nor made in good faith, it was error on the part of the district court to grant Union Pacific's motion.

We first address Asplundh's assertion that it had no right or duty to take over defense of the suit when so offered by Union Pacific. This claim is controlled by Missouri Pacific R.R. Co. v. Kansas Gas & Elec. Co., 862 F.2d 796 (10th Cir. 1988) (applying Kansas law). In that case this court held that:

> Where an indemnitor denies liability and refuses to assume the defense of a claim under a contract of indemnity, the indemnitee, without waiving its rights [to indemnification], may enter into a good faith, reasonable and prudent settlement with the claimant.

Id. at 800. Thus, in order to trigger an indemnitor's duty to cover a settlement, the indemnitee need only show that it was under "potential liability . . . and that the settlement amount was *reasonably related* to its employee's injuries." Id. (quotation omitted). Thus, we are left only with the question of whether Union Pacific was subject to "potential liability" when it entered into the settlement with Neustrom and whether the settlement was reasonably related to Neustrom's claimed injuries.

Asplundh attacks Union Pacific's decision to enter into a settlement with Neustrom by rearguing its position that Neustrom had no viable claim. This argument ignores the fact that Union Pacific was at all times subject to *potential*

liability, especially given that the obstacles to recovery facing FELA plaintiffs are much lower than those facing most tort plaintiffs. See id. Union Pacific was clearly under potential liability for this claim.

Next, we must turn to the question of whether the settlement amount was reasonably related to Neustrom's injuries, as found by the district court. We review this finding of fact by the district court for clear error. See Hockett v. Sun Co., 109 F.3d 1515, 1525-26 (10th Cir. 1997); Molett v. Penrod Drilling Co., 919 F.2d 1000, 1009 (5th Cir. 1990). Highly persuasive is the evidence on the record that Asplundh's own attorneys repeatedly indicated that $65,000 was a reasonable settlement figure, especially given that in his complaint Neustrom asked for nearly one million dollars to cover his medical expenses, pain and suffering, and loss of income, both real and potential. The $65,000 for which Neustrom settled was well below his calculated loss. For these reasons, the district court's finding that the settlement amount was reasonably related to Neustrom's injuries was not clearly erroneous.

## IV. Attorneys' Fees, Litigation Costs, and Prejudgment Interest

We review the district court's decision to award prejudgment interest for abuse of discretion. See Driver Music Co. v. Commercial Union Ins. Co., 94 F.3d 1428, 1433 (10th Cir. 1996). "The general rule is that an unliquidated claim for

damages does not draw interest until liquidated." In re Midland Indus., Inc., 703 P.2d 840, 842 (Kan. 1985).

> A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation. Where an amount is due upon contract, either express or implied, and there is no uncertainty as to the amount which is due or the date on which it becomes due, the creditor is entitled to recover interest from the due date.

Id.

Asplundh first asserts that the district court erred in awarding Union Pacific prejudgment interest on its settlement with Neustrom because that settlement was not liquidated until the court made its determination as to its reasonableness. Union Pacific responds that as of September 26, 1995, the date that Union Pacific settled with Neustrom, the amount of the settlement became liquidated as required by Kansas law.

Once Union Pacific and Neustrom agreed upon a settlement amount, barring a showing that the settlement was not reasonably related to the underlying injury or that it was entered into in bad faith, the settlement amount became liquidated for the purposes of assessing prejudgment interest. As discussed above, Asplundh did not make such a showing. Thus, the district court did not err in awarding Asplundh prejudgment interest on the settlement amount,

commencing from the date the settlement became final. See Missouri Pacific, 862 F.2d at 801.

As for the attorneys' fees issue, "[a]lthough generally we review a district court's award of attorneys' fees for an abuse of discretion, we review its application of the legal principles underlying the award *de novo*." Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 765 (10th Cir. 1997). "Under Kansas law, the prevailing party in a lawsuit may recover attorneys' fees where such is specifically authorized by statute or contract." Missouri Pacific, 862 F.2d at 801. The contract between Union Pacific and Asplundh requires Asplundh to pay Union Pacific's attorneys' fees "arising out of any injury or death of any person" when such injury or death "occurs from any cause and is associated in whole or part with the work performed under this agreement . . . or any activity . . . arising out of . . . nonperformance of this agreement."

In Missouri Pacific, this court was faced with substantially the same question, i.e., whether a party's contractual agreement to pay attorneys' fees for claims "arising out of or connected with" the party's failure to keep the track clear of obstacles included attorneys' fees incurred in the course of enforcing the agreement itself. See Missouri Pacific, 862 F.2d at 801. We held that it did. See id. Thus, we must interpret the similar language in the contract before us here to

encompass attorneys' fees incurred during Union Pacific's action to enforce the agreement.

However, we agree with Asplundh that the calculation of the fees and costs cannot stand because of the district court's failure to make a finding that Union Pacific's attorney's fees and costs were reasonable. The district court held that because the indemnification provision does not require that attorneys' fees be "reasonable," no such showing was required. To the contrary, under Kansas law, a duty to act reasonably and in good faith must be read into every contract, including the terms of indemnification clauses. See Hartford v. Tanner, 910 P.2d 872, 877-79 (Kan. Ct. App. 1996) (citing cases). As the Kansas Supreme Court has noted, "'if one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee.'" Kansas Baptist Convention v. Mesa Operating Ltd. Partnership, 864 P.2d 204, 211 (Kan. 1993) (quoting Bonanza, Inc. v. McLean, 747 P.2d 792, 801 (Kan. 1987)) (further citation omitted). In holding that Union Pacific need not show the reasonableness of its attorneys' fees, the court ignored this well-established rule of contract construction. Thus, absent a finding by the district court that the fees and costs claimed by Union Pacific were reasonable, it was error to assess those fees and costs against Asplundh. Therefore, we remand and instruct the district court to determine the reasonable fees and costs incurred by

Union Pacific in defending itself against Neustrom's claim and in pursuing indemnification from Asplundh.

## Conclusion

For the reasons stated above, we AFFIRM the district court's grant of summary judgment to Union Pacific on the issue of indemnification, we AFFIRM the district court's assessment against Asplundh for the amount of Union Pacific's settlement with Neustrom, plus prejudgment interest and costs, and we VACATE and REMAND the award of attorneys' fees and legal costs with instructions that the district court determine the reasonable costs and attorneys' fees incurred by Union Pacific. The district court's order awarding prejudgment interest on attorneys' fees, costs, and expenses which were liquidated in amount as of October 1, 1995, is AFFIRMED.