**CRANE CONSTRUCTION CO., Plaintiff,**

v.

**KLAUS MASONRY and Coates Roofing Co., Inc., Defendants.**

**No. Civ.A.97–1502–MLB.**

United States District Court, D. Kansas.

Sept. 23, 1999.

Wyatt A. Hoch, Foulston & Siefkin L.L.P., Wichita, KS, Patrick J. O'Connor, Jr, James J. Hartnett, IV, Faegre & Benson, LLP, Minneapolis, MN, for Crane Construction Company, plaintiff.

Ron C. Campbell, Lyndon W. Vix, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Klaus Masonry,, Brad Murray, Inc., defendants.

Craig Kennedy, Johnson, Kennedy, Dahl & Willis, Wichita, KS, for Wichita Steel & Precast Erection Company, defendant.

William R. Smith, J. Philip Davidson, Bradley S. Parker, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, Jerome V. Bales, Lathrop & Gage L.C., Kansas City, MO, Nicholas E. Bragorgos, McNabb, Holley & Waldrop, PLLC, Memphis, TN, for Coates Roofing Company Inc., defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court for consideration of plaintiff Crane Construction Company's ("Crane Construction's") motion for partial summary judgment. The court has reviewed all documents relevant to this matter including, but not limited to, Crane Construction's motion for partial summary judgment and its supporting memorandum and exhibits (Docs.85–87), responses by defendants Klaus Masonry (Doc. 99) and Coates Roofing Company, Inc. ("Coates Roofing") (Doc. 98), Crane Construction's reply (Doc. 102), and this court's pretrial conference order (Doc. 91). The court heard oral argument on September 16, 1999. For the following reasons, Crane Construction's motion will be denied.

### I. NATURE OF CASE

Crane Construction brings this contractual indemnity action against Klaus Masonry and Coates Roofing to recover a portion of monies spent in settlement of an action brought by Wal–Mart Stores, Inc. ("Wal–Mart") against Crane Construction.

The Wal–Mart/Crane Construction action concerned, among other matters, a dispute over defective construction of several Wal–Mart stores, including a Wichita, Kansas project that involved work subcontracted by defendants. The present motion seeks a ruling from the court stating that defendants Klaus Masonry and Coates Roofing "are required to indemnify [Crane Construction] for all its expenses incurred (including settlement costs, attorney's fees, and legal costs) in defending against Wal–Mart's claims of defective work allegedly performed by the defendants" (Doc. 86 at 2). In its reply memorandum, Crane Construction has clarified its position. It states:

> Crane has attempted to allocate to each defendant only the costs of repairing their respective defective work and the litigation costs associated with defending against Wal–Mart's claims of defective work. No attempt has been made to charge these defendants with any other costs.... If the Court grants this Motion, Klaus will still be free to try and prove at trial that Crane has improperly allocated to its damages that are not related to its defective work.... The defendants will still be able to challenge Crane's allocation methodology.

The court has jurisdiction under 28 U.S.C. §§ 1332(a) and now considers Crane Construction's partial summary judgment motion. The parties stipulate that venue properly rests in this District and that this court has jurisdiction over the subject matter.

## II. STANDARDS OF REVIEW

The usual and primary purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir.1998) (citations omitted).

The moving party must initially show both an absence of a genuine issue of material fact, as well as entitlement to judgment as a matter of law. Id. at 670. The nature of the showing depends upon whether the movant bears the burden of proof at trial with the particular claim or defense at issue in the motion. If the nonmoving party bears the burden of proof, the movant need not "support its motion with affidavits or other similar materials negating the opponent's" claims or defenses. Celotex, 477 U.S. at 323, 106 S.Ct. 2548 (emphasis in original). Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the nonmovant's claim. Adler, 144 F.3d at 671 (citing Celotex, 477 U.S. at 325, 106 S.Ct. 2548). On the other hand, if the movant has the burden of proof on a claim or defense raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim or defense. E.g., United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). The Tenth Circuit has held that "[t]he standard is particularly strict when such a ruling is made in favor of the party with the burden of proof." Weese v. Schukman, 98 F.3d 542, 547 (10th Cir.1996). Under this strict test, the party bearing the burden of proof at trial earns a favorable ruling only when evidence is presented that "the jury would not be at liberty to disbelieve." Id.

Once the moving party properly supports its motion, the burden shifts to the nonmoving party, "who may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Muck v. United States, 3 F.3d 1378, 1380

(10th Cir.1993). In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir.1994). A party opposing summary judgment "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Certain rules govern the presentation of facts and evidence. Local Rule 56.1 requires the movant to set forth a concise statement of material facts. D.Kan.Rule 56.1. Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which the movant relies. *Id.* An opposing memorandum must contain a similar statement of facts. The opponent must number each fact in dispute, refer with particularity to those portions of the record upon which it relies, and if applicable, state the number of the movant's fact which is in dispute. The court may, *but is not obligated to,* search for and consider evidence in the record that would rebut the movant's evidence, but that the opponent has failed to cite. *Adler*, F.3d at 672. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment *unless specifically controverted* by the statement of the opposing party. *See Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir.1996) (applying local rules of District of Utah). A standing order of this judge also precludes drawing inferences or making arguments within the statement of facts.

■ The parties need not present evidence "in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. For example, hearsay testimony that would be inadmissible at trial may not be included...." *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir.1995) (internal quotations and citations omitted). Similarly, the court will disregard conclusory statements and statements not based on personal knowledge. *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1382 (10th Cir.1994) (regarding conclusory statements); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995) (requiring personal knowledge). Last, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). Fed.R.Civ.P. 56(e); D.Kan.Rule 56.1; 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2722 (2nd ed.1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, the court must review the "factual record and reasonable inferences therefrom in the light most favorable to the nonmoving/opposing party." *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir.1996); *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2514. If sufficient evidence exists on which a trier of fact could reasonably find for the non-moving party, summary judgment is inappropriate. *Pre-*

*nalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (1991).

## III. FACTS

### A. *The Subcontracts*

Crane Construction is a general contractor hired by Wal–Mart in the early 1990s to build numerous Wal–Mart stores, Supercenters, and Sam's Clubs throughout the southern United States. Relevant to this action, Crane Construction entered into contracts with Wal–Mart in 1992 to build a Sam's Club store in Wichita, Kansas ("the Wichita Project" or "the Wichita store"), a Wal–Mart Supercenter in McKinney, Texas ("the McKinney Project" or "the McKinney store"), and a Wal–Mart store in Duncanville, Texas ("the Duncanville Project" or "the Duncanville store") (referred to collectively as "the Projects" or "the stores") (Doc. 86 at 2; Doc. 94 at 3; Doc. 98 at 2; Doc. 99 at 3; Doc. 102 at 3). Copies of the contracts are attached to Crane Construction's motion (Doc. 87, Ex. A).

Each of these contracts included the American Institute of Architect's ("AIA's") Document A201, titled "General Conditions of the Contract for Construction" ("the General Conditions"). Part of the General Conditions is a warranty clause, whereby Crane Construction warranted that the materials used in the Projects would be of good quality, the work would be "free of defects not inherent in the quality required or permitted," and the work would conform to the requirements of the contract documents (Doc. 86 at 3; Doc. 94 at 3; Doc. 98 at 2; Doc. 99 at 3; Doc. 102 at 3; Doc. 87, Ex. B).

On or about October 5, 1992, Crane Construction entered into a written subcontract with Klaus Masonry for the performance of the concrete masonry work on the Wichita Project. (Doc. 86 at 3; Doc. 94 at 3; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 3). The amount of the subcontract was $140,000. (Doc. 87, Ex. C).

Crane Construction entered into three separate written subcontracts with Coates Roofing for the performance of the instal-lation of the roofs of the Projects: (1) September 21, 1992, for the Wichita Project; (2) September 22, 1992, for the McKinney Project; and (3) November 18, 1992, for the Duncanville Project (Doc. 86 at 3; Doc. 94 at 3; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 3). The total amount of the subcontracts was $518,000 (Doc. 87, Ex. E).

Each of the subcontracts entered into by the defendants incorporated by reference the General Conditions of the Contracts (Doc. 86 at 3; Doc. 94 at 3; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 3). The subcontracts all contained, at paragraph IV, the following indemnity and hold harmless provision:

> The SUBCONTRACTOR agrees to protect, indemnify and hold harmless CRANE free and harmless from and against any and all claims, demands and causes of action of every kind and character (including the amounts of judgments, penalties, interest, court costs and legal fees incurred by CRANE in defense of same arising in favor of Governmental Agencies or third parties (including employees of either party)) on account of taxes, claims, fines, debts, personal injuries, death or damages to property, and without limitation by enumeration all other claims or demands of every character occurring or in anywise incident to, in connection with or arising out of the WORK to be performed by SUBCONTRACTOR.

(Doc. 86 at 3–4; Doc. 94 at 3; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 4; Doc. 87, Exs. C–E).

Work commenced on the Projects in 1992, and the Projects were substantially complete on or before August 1993 (Doc. 86 at 4; Doc. 94 at 3; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 4).

### B. *The Crane Construction/Wal–Mart Lawsuit*

In 1993, Crane Construction commenced a lawsuit in a Tennessee federal court, alleging that Wal–Mart failed to pay Crane

Construction millions of dollars in contract balances and change order funds in connection with Crane Construction's work for Wal–Mart ("the Memphis Action"). In turn, Wal–Mart asserted a counterclaim on or about October 5, 1994, alleging breach of contract, negligent construction and supervision, breach of duty of payment, and breach of warranty. In part, Wal–Mart sought damages relating to its claims of defective construction. Wal–Mart also commenced a separate action against Crane Construction's surety, United States Fidelity & Guaranty Company ("USF & G"), asserting claims under the performance bonds that USF & G issued in connection with all eleven projects, including the Projects. Wal–Mart's lawsuit against USF & G subsequently was consolidated into the Memphis Action (Doc. 86 at 4–5; Doc. 94 at 3; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 4; Doc. 87, Ex. L).

Prior to and during the life of the Memphis Action, Wal–Mart expended millions of dollars for work that it claimed was necessary to repair allegedly defective work on the Projects, including repairs of structural steel, concrete masonry, and roofing. Much of this work apparently was done to address deviations from the original design plans (Doc. 86 at 8; Doc. 94 at 5; Doc. 98 at 3; Doc. 99 at 4; Doc. 102 at 5).

As a result of a June 1996 settlement conference/mediation, Crane Construction, Wal–Mart, and USF & G settled their respective claims against each other from the Memphis Action. The settlement involved several million dollars and covered Crane Construction and its subcontractors. (Doc. 86 at 8–9 and 19; Doc. 94 at 5; Doc. 98 at 3; Doc. 99 at 4; Doc. 102 at 5; Doc. 90).

### C. *Actions Taken by Crane Construction Concerning Klaus Masonry and Coates Roofing*

On or about January 3, 1994, Crane Construction filed a third-party complaint in the Memphis Action against several third-party defendants, including Klaus Masonry and Coates Roofing, alleging that "Plaintiff Crane is entitled to be indemnified by the Third Party Defendants for their defective and/or faulty workmanship on the Projects, and any and all other damages proximately caused thereby" (Third Party Complaint and Amended Third Party Complaint, Doc. 87, Exs. I & J respectively).

During the period from November 1994 to May 1995, Crane Construction sent several identical letters to Klaus Masonry and Coates Roofing and their respective insurers. These letters stated, in pertinent part:

1. November 7, 1994:

Enclosed is a copy of the Amended Response of Wal–Mart Stores, Inc. to Plaintiff's First Amended Complaint. In its response, Wal–Mart asserts a counterclaim against Crane Construction Company, in which Wal–Mart alleges defective, deficient, and non-conforming construction work performed on the following projects: Amory, Mississippi; Duncanville, Texas; McKinney, Texas; Little Rock, Arkansas; Berryville, Arkansas; Dyersburg, Tennessee; McAlester, Oklahoma; Raymore, Missouri; Tulsa, Oklahoma; West Helena, Arkansas; and Wichita, Kansas. Also enclosed is a copy of the List of Known Defective Work filed by Wal–Mart in its pending litigation with Crane in the United States District Court in Memphis, Tennessee. The list of known defective work (which Wal–Mart does not intend to constitute the complete list of deficiencies) indicates that Wal–Mart is alleging defects, deficiencies, and non-conformances in the work you performed on the relevant project(s).

Paragraph IV of your Subcontract Agreement with Crane Construction Company provides that you agreed to protect, indemnify, and hold Crane free and harmless from and against any and all claims, demands, and causes of action of every kind and character (including the amounts of judgments, penalties, interest, court costs, and legal fees in-

curred by Crane in defense of same) of the work performed by you on the relevant project(s). The indemnity and hold harmless provision in your Subcontract Agreement with Crane Construction Company applies to all claims or demands of every character occurring or in anywise incident to, in connection with, or arising out of your work.

As demonstrated by the attached pleadings, Wal–Mart has asserted claims arising out of the work you performed on the relevant project(s). Accordingly, Crane Construction Company demands that you comply with the terms of your Subcontract Agreement, and that you reimburse Crane for all expenses incurred and to be incurred (including attorney's fees) in defending Wal–Mart's claims. Crane Construction Company requests that you respond to this demand within two weeks because of the speed with which the Memphis proceedings are advancing.

2. January 16, 1995:

This letter is intended to provide you with additional information and documentation in regard to the allegations being made by Wal–Mart in regard to defective work in the projects. This letter also reiterates Crane's demand for indemnification in regard to the alleged defective work and performance by subcontractors in regard to holding Crane harmless from attorney fees, expenses and costs pursuant to your subcontract.

3. February 29, 1996:

On December 22, 1995, we notified or attempted to notify subcontractors and their insurers that Wal–Mart's 2000 page defects/deficiencies list was available for review. . . . Various previous notices of Wal–Mart's claims have been sent or attempted. That same letter also reiterated Crane's previous demand that the subcontractors indemnify and hold Crane harmless in its defense of these matters and with respect to all costs, expenses and damages incurred and to be incurred as a result of this litigation. To date, some subcontractors have breached their indemnification and

hold harmless obligations to Crane. This letter hereby reiterates once again Crane's demand that the subcontractors indemnify and hold it harmless in regard to Wal–Mart's claims against Crane arising out of alleged defects/deficiencies in the above-referenced project(s). (See subcontract Paragraph IV).

4. May 30, 1996:

We are writing you for two reasons. First, as we have informed you on several occasions in the past, you are obligated to indemnify and hold Crane harmless from claims, expenses and damages relating to your work on any one of the eleven stores, all as more specifically set forth in your subcontract agreement with Crane. Additionally, we are writing to notify you that as a result of a May 22, 1996, hearing before Judge Horton who presides over the Memphis litigation, conferences are scheduled in Memphis on June 14, 15 and 16, 1996.

During the course of the Memphis litigation Crane has notified you of the suit, brought to your attention the fact that you are contractually obligated to indemnify and hold Crane harmless, demanded that you indemnify and hold Crane harmless and notified you that Crane intends to bind you to determinations and judgments rendered in the Memphis litigation. Despite the fact that we are nearing trial in this matter, few subcontractors have done anything to voluntarily participate in the Memphis litigation and no subcontractor has done anything to defend, indemnify or hold Crane harmless with respect to that litigation. Accordingly, Crane hereby places you on notice that 1) he is defending against claims in the Memphis litigation that your work on one or more of the eleven Wal–Mart stores is defective, 2) under your subcontract agreement with Crane you are obligated to indemnify and hold him harmless with respect to that work, 3) Crane's defense is hereby tendered to you and demand is made upon you to appear in the Mem-

phis litigation and defend Crane, 4) Crane intends to bind you to any determinations or judgments rendered in the Memphis litigation, 5) you will be liable for Crane's defense costs and expenses, including attorneys fees, incurred in defending the Memphis litigation, as well as for all damages for which Crane may be adjudged liable in that action, and 6) you will also be liable for the expenses and costs, including attorneys fees, incurred by Crane in enforcing its indemnity agreement with you. (Doc. 86 at 5–8; Doc. 87, Ex. H; Doc. 98 at 3; Doc. 99 at 4; Doc. 102 at 4–5).

Defendants apparently responded to at least some of these letters, but neither acquiesced to Crane Construction's demands for indemnification (Doc. 86 at 8; Doc. 95, Ex. 1, 98 at 3; Doc. 99 at 4; Doc. 102 at 5; Doc. 122).

Although some of Crane Construction's subcontractors remained in the Memphis Action and assisted Crane Construction in the defense of Wal–Mart's claims, Crane Construction was unable to maintain personal jurisdiction over Klaus Masonry and Coates Roofing and its claims against them were eventually dismissed without prejudice [1] (Doc. 86 at 8 & 8 n. 3; Doc. 98 at 3; Doc. 99 at 4 and Ex. A; Doc. 102 at 5).

### D. *Crane Construction's List of Deficiencies*

In 1994 and 1995, Wal–Mart hired the engineering firm of Wiss, Janney, Elstner Associates ("WJE") to inspect each of the Projects and to identify those items of construction that were defective. Subsequently, WJE inspected the Projects and generated comprehensive lists of construction defects. WJE's deficiency list for the Wichita Project set out a large number of alleged masonry construction defects which WJE attributed to the work of Klaus Masonry including missing grout in concrete masonry unit walls, and missing rebar in concrete masonry unit walls (Doc. 86 at 5; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 4).[2]

WJE claimed that the roofs installed by Coates Roofing on the Projects were defective because they contained an insufficient number of mechanical fasteners to meet the contractually required wind uplift requirements (Doc. 86 at 5; Doc. 98 at 3; Doc. 99 at 3; Doc. 102 at 4).

### E. *Defendants' Responses to the Deficiencies*

#### 1. **Klaus Masonry**[3]

Klaus Masonry was hired for the Wichita Project by Brooks Hines of Crane Construction and worked under the direction and control of Hines (Doc. 99 at 5). Hines advised Klaus Masonry that Wal–Mart was in a hurry to complete the job and, on occasions, directed Klaus Masonry to work in unfit weather conditions, e.g., conditions that were too wet and too cold for masonry work. George Klaus voiced his concerns to Hines about working in these conditions, but Hines told him that he was to do the work or get his equipment off the job site and Hines would hire another masonry contractor to perform the work. Hines told George Klaus that he wanted quantity over quality and that he would "sell it" to Wal–Mart. Notwithstanding this scenario, Klaus Masonry was never notified of any

---

1. The claim against Coates Roofing was dismissed without prejudice on or about March 21, 1996, for lack of personal jurisdiction. The claim against Klaus Masonry was dismissed voluntarily without prejudice on November 9, 1994.

2. These expert documents and summaries are included as attachments to Crane Construction's motion (Doc. 87, Hartnett Aff., Exs. F and G).

3. George Klaus owned and operated Klaus Masonry as a sole proprietorship. Mike Klaus, George's son, began working for Klaus in 1979 and worked on the Wichita Project every day as a brick layer. George Klaus passed away on December 2, 1994. Crane Construction was notified of Klaus's death by Klaus's insurance company on December 19, 1994 (Doc. 99 at 4–5). Klaus Masonry has filed a motion to dismiss on the ground that it is not a legal entity (Doc. 112). The motion is pending.

masonry problems while on the jobsite (Doc. 99 at 5).

The masonry work done by Klaus Masonry on the Wichita Project was inspected by Kaw Valley, an independent engineering firm. A November 1992 report from Kaw Valley states that the masonry work was being performed in accordance with the plans and specs. Additionally, Klaus Masonry was never given the opportunity to correct any allegedly defective work (Doc. 99 at 5).

## 2. Coates Roofing

Coates Roofing received letters of acceptance from Wal–Mart regarding the Duncanville and McKinney, Texas stores. On November 1, 1994, Scott Dever, director of construction at Wal–Mart, wrote to Scott Guest, United States Fidelity and Guaranty Company, to advise him that Wal–Mart considered the work done by Coates Roofing at the McKinney, Texas location to be satisfactory and complete. On January 6, 1995, Scott Dever wrote to Scott Guest to advise that Wal–Mart considered the work done by Coates Roofing Company at the Duncanville, Texas location to be satisfactory and complete. At no time were either of these letters rescinded or changed by Wal–Mart. (Doc. 98 at 4–5).

At the time the letters of acceptance were written, Coates Roofing had no knowledge of any complaints regarding the roofs at the Duncanville or McKinney stores, nor had Coates Roofing been told that a problem had developed with either roof. At the conclusion of all three roofing projects (Duncanville, McKinney, and Wichita), Coates Roofing was called back only for "punch list work" which were minor items that needed to be corrected before the projects could be completed. Coates Roofing completed 100 percent of all three projects, and each of the roofs was accepted by Wal–Mart. (Doc. 98 at 5). Prior to the filing of this action, no one associated with Coates Roofing was ever told by Crane Construction or Wal–Mart that a problem had arisen with regard to the roofs at the McKinney, Duncanville or Wichita stores. (Doc. 98 at 5).

Coates Roofing inquired about any possible complaints of the McKinney, Duncanville, and Wichita store roofs, so that any complaints could be repaired if needed. On May 5, 1995, Bruce Coates wrote to Jerry Hickman of W.S. Bowlware Construction regarding the Sam's Club in Wichita, Kansas. In this letter, Mr. Coates expressly stated that if Wal–Mart felt that there were deficiencies in the workmanship or materials, that Coates Roofing would perform whatever repairs were needed in order to correct the situation. Wal–Mart did not issue a response or any other reaction to Mr. Coates' letter of May 5, 1995. (Doc. 98 at 5).

On April 8 and 9, 1996, Brian Coates and Laura Goode, both of Coates Roofing Company, were deposed by attorneys for Crane Construction Company as part of the discovery taken in the Memphis Action. (Doc. 98 at 4).

In October 1998, Coates Roofing retained Jim D. Koontz and Associates, Inc. ("Koontz") to inspect each of the roofs to determine whether they were properly installed. Koontz concluded that the roofs on both the McKinney store and the Duncanville store were installed properly, with the appropriate number of fasteners. Koontz attempted an on-site inspection of the Wichita store roof, but was denied access to it (Doc. 98 at 6; Exs. 7 and 8).

Koontz also reviewed the report and deposition testimony of the expert retained by Crane Construction to inspect the roofs installed by Coates Roofing. Crane Construction's expert testified in his deposition of September 23, 1998, that he counted the roof fasteners in the Wichita store by walking along the store floor and looking up at the ceiling, twenty-six feet away. Koontz concluded, based on the deposition testimony, that the expert's visual inspection of the roof from the floor of the store, without the use of binoculars, could not have provided any reliable information. The expert confirmed that he had no magnifying device when making this examination (Doc. 98 at 7).

## IV. DISCUSSION[4]

### A. *Validity of the Indemnification Provision*

■ Judge Van Bebber, in *Dixon v. Certainteed Corp.*, succinctly stated the appropriate first steps of analysis when a court is confronted with a Kansas indemnification agreement issue:

The court's initial inquiry focuses on whether the indemnification provisions in the construction contract are ambiguous. *Missouri Pacific R.R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 799 (10th Cir.1988) (citing *McBride Elec., Inc. v. Putt's Tuff, Inc.*, 9 Kan.App.2d 548, 685 P.2d 316, 321 (1984)). If the court can ascertain the intent of the parties "by construing the document from its four corners," the contract is unambiguous, "and rules of construction applicable to ambiguous contracts do not apply." *Brown v. Lang*, 234 Kan. 610, 675 P.2d 842, 846 (1984). This inquiry involves a matter of law to be decided by the court. *Fountain v. Se-Kan Asphalt Servs., Inc.*, 17 Kan.App.2d 323, 837 P.2d 835, 839 (1992).

944 F.Supp. 1501, 1505 (D.Kan.1996).

■ Defendants do not directly contend that the indemnification provision is ambiguous. Klaus Masonry points out that the provision does not expressly provide for indemnification of Crane Construction's negligence, citing *Elite Prof'ls, Inc. v. Carrier Corp.*, 16 Kan.App.2d 625, 634–35, 827 P.2d 1195 (1992), and other cases. Its argument misses the point. Wal–Mart's counterclaim against Crane Construction, which prompted Crane Construction's demand for indemnification, alleged breach of contract, breach of duty of payment and breach of warranty in addition to negligence. (Doc. 87, Ex. L). Assuming, for purpose of discussion, that the indemnifi-

cation provision is not specific enough to cover Wal–Mart's negligence claims, it clearly encompasses the other claims. The settlement agreement (Doc. 90 at 2) refers to Crane Construction's breaches of its contract with Wal–Mart and settles those claims. At oral argument, counsel for Klaus Masonry and Coates Roofing conceded that any claims of negligence made by Wal–Mart against Crane Construction (e.g., Doc. 117) likewise could be considered as Crane Construction's breaches of its contract with Wal–Mart.

In a footnote, Klaus Masonry declares that "it would certainly be a question of fact as to the disparity and bargaining power between Klaus and Crane." (Doc. 99 at 8). There is no evidence in the record regarding Crane Construction's and Klaus Masonry's respective sizes. Thus, the court has no basis to find any disparity. However, even if it is assumed that Crane Construction is bigger than Klaus Masonry, that fact alone does not compel a finding of disparity, much less that the indemnification provision is invalid. In summary, the court concludes that the indemnification provision is valid and enforceable.

### B. *Coates Roofing Miscellaneous Arguments Regarding Its Liability in Connection With the Crane Construction/Wal–Mart Settlement*

■ Crane Construction attempted to join Coates Roofing in the Memphis Action, but Coates Roofing was able to extricate itself through dismissal without prejudice on lack of personal jurisdiction grounds. Coates Roofing now claims that the dismissal deprived it of an opportunity to defend against Crane Construction's allegations of defective work, but it cites neither authority nor reasoned argument in support of that claim (Doc. 98 at 17–18).

---

**4.** In the pretrial conference order, the parties agreed that Kansas law would govern this case with respect to the Wichita Project subcontracts and Texas law would govern this case with respect to the Duncanville and McKinney Projects (Doc. 91 at 2). However, the parties who created the Texas subcontracts—Crane Construction and Coates Roof-

ing—now agree that the Texas subcontracts should be considered under Kansas law because of the substantive similarity in this area of law between the two jurisdictions (Doc. 86 at 10–11; Doc. 98 at 9–10). The court agrees and therefore considers all of the subcontracts under the laws of the State of Kansas.

Coates Roofing was given multiple, detailed notices of Wal–Mart's counterclaims and Crane Construction's claims for indemnification. Crane Construction's notices amounted to the common-law practice of vouching or vouching in, which is discussed at some length in *SCAC Transport (USA) Inc. v. S.S. Danaos*, 845 F.2d 1157, 1161–63 (2d Cir.1988), *Universal Am. Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1138–39 (5th Cir.1991), and the cases and authorities cited therein. Common law "vouching in" is a procedure which may be utilized where absence of personal jurisdiction makes impleader unavailable. *SCAC Transport, supra*, 845 F.2d at 1162. Absence of personal jurisdiction can be waived. Fed.R.Civ.P. 12(h)(1). *See also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (2d ed.1990). "Vouching in" is recognized in Kansas in the context of K.S.A. 84–2–607(5)(a). *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 473, 657 P.2d 517 (1983),[5] and *Alvarado v. J.C. Penney Co., Inc.*, 768 F.Supp. 769, 773 (D.Kan.1991), *aff'd*, 997 F.2d 803 (10th Cir.1993). Coates Roofing has not contested the adequacy of Crane Construction's notices or the legitimacy of its use of "vouching in," either in its response to Crane Construction's motion, the pretrial order or at oral argument.

By successfully electing to raise lack of personal jurisdiction, Coates Roofing deprived *itself* of the opportunity to defend against Crane Construction's allegation in the Memphis Action. Consequently, Coates Roofing's argument that it was deprived of the opportunity to defend is disingenuous and cannot form the basis for avoiding liability arising out of its agreement to indemnify Crane Construction.

### C. *Applicability of Missouri Pacific v. KG & E and Neustrom v. Union Pacific*

In support of its motion, Crane Construction relies on *Missouri Pac. R.R.*

---

**5.** Ron Campbell, Klaus Masonry's counsel, was counsel for one of the parties, Peugeot

*Co. v. Kansas Gas and Elec. Co.*, 862 F.2d 796 (10th Cir.1988), and *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057 (10th Cir.1998), which stand for the general proposition that when an indemnitor refuses a demand for indemnification, "[u]nder Kansas law, an indemnitee who settles a claim that is covered by an indemnity agreement need only prove that it was potentially liable for the claim and that the settlement was reasonable in order to recover from the indemnitor" (Doc. 86 at 10–11). Crane Construction claims uncontroverted facts establish that it was potentially liable to Wal–Mart and that its settlement was reasonable. Accordingly, under *Missouri Pacific* and *Neustrom*, Crane Construction seeks a ruling relieving it of the obligation to prove that the costs to repair Wal–Mart's buildings, as well as Crane Construction's litigation expenses in the Memphis Action, were both reasonable and related to the deficiencies in defendants' work under the subcontracts.

Defendants make several arguments in their written responses against application of *Missouri Pacific* and *Neustrom*; none are on point. Klaus Masonry argues in its memorandum that *Neustrom* is distinguishable because the indemnity language at issue specifically addressed negligence. (Doc. 99 at 8). For the reasons previously stated, this argument is unavailing. Klaus Masonry does not mention *Missouri Pacific*. Coates Roofing argues *Missouri Pacific* and *Neustrom* are "not controlling" because the cases involved claims of demonstrated negligence whereas the injury in this case—defective construction—has not been shown to be caused by Coates Roofing's negligence. Coates Roofing also attempts to distinguish *Missouri Pacific* and *Neustrom* on the basis that they were FELA cases. It argues that because few, if any, common law defenses are available

---

Motors of America, Inc.

in a FELA case, the indemnitee's burden to prove "potential liability" is much less than it should be in "an ordinary civil action like this one. . . ." Coates Roofing effectively abandoned this argument by admitting at oral argument that Crane Construction was potentially liable to Wal–Mart.

In the court's view, *Missouri Pacific* and *Neustrom* are clearly applicable to the facts of this case, but the decisions do not support the ruling requested by Crane Construction. First, because defendants did not honor Crane Construction's demand for indemnification, defendants are entirely foreclosed from arguing at trial that Crane Construction was not potentially liable to Wal–Mart and that the global settlement was unreasonable and/or unrelated to Wal–Mart's claims of injury. Defendants conceded during oral argument that they would have no way to challenge the global settlement, and the court finds that undisputed facts establish Crane Construction's "potential liability" to Wal–Mart in general and the reasonableness of the global settlement.

Second, application of the principles discussed in *Missouri Pacific* and *Neustrom* abate Crane Construction's burden of proving its liability to Wal–Mart for Wal–Mart's claims based on work performed pursuant to defendants' subcontracts. Had defendants appeared in the Memphis Action, Crane Construction would have been required to prove it was *actually* liable for defendants' work before recovering under the indemnity provisions. However, because defendants did not, Crane Construction must only prove in this action that it was *potentially* liable to Wal–Mart for defendants' work, and the amount paid to settle the claims related to that work was reasonable.

■ The additional and more extensive relief Crane Construction argues it is enti-

tled to is unsupported. Essentially, Crane Construction wants the court to rubber-stamp WJE's report identifying the alleged defective work attributed to defendants, state as a matter of law that the amount paid to repair the defects was reasonable, and prohibit defendants from putting on any substantive defenses to its indemnification claims. As Crane Construction's counsel admitted during oral argument, if the court granted the motion, defendants would only be able to challenge Crane Construction's allocation methodology. The court is not persuaded that the law, nor the facts of this case, require such a determination.

The record does not show that the global settlement of Wal–Mart's claims against Crane Construction was arrived at by individually determining, and then aggregating, costs to repair Crane Construction's and its subcontractors' defective work. Thus, there was no method by which defendants could determine their respective shares of the global settlement and the extent of their liability under the terms of the indemnification provisions. Crane Construction tries to remedy this fact with WJE's report of how Wal–Mart's claims of defective work *should have* been delineated at the time of settlement, in essence, attempting to unilaterally allocate defendants' responsibility and eliminating any issues of who was or is responsible for the defects. As Crane Construction's counsel admitted, it is unfortunate that the global settlement was not apportioned among the various parties involved in the stores' construction. Had that in fact happened, defendants' ability to challenge Crane Construction's claim for indemnification would be straightjacketed.

As it stands, genuine issues remain as to Crane Construction's potential liability for defendants' work and the reasonableness of the settlement amounts allocated to defendants.[6] For this reason, Crane Con-

---

**6.** For instance, reasonableness depends on the relationship between the amount of the settlement and the injuries Wal–Mart allegedly suffered. *See Missouri Pacific,* 862 F.2d at

800. Granting summary judgment on this issue is impossible when the record contains no evidence of Wal–Mart's specific allegations of the defective work performed by defen-

struction will have to prove at trial that it was potentially liable for defendants's work. Crane Construction must also prove the sum it seeks to recover from defendants represents the costs of repairing defendants' respective work as well as its method of allocating the costs. Defendants may present appropriate defenses.

Crane Construction's counsel · claimed during oral argument that, if the court refused to apply *Missouri Pacific* and *Neustrom* and denied Crane Construction's motion, indemnitors would have no reason to assume defense of claims against indemnitees. Furthermore, he argued indemnitees' ability to settle claims against them in such instances would be thwarted. The court disagrees. As discussed previously, indemnitors who fail to assume defense once tendered by an indemnitee are prohibited from challenging an indemnitee's actual liability when the indemnitee later seeks to recover from the indemnitor. Instead, proof of potential liability imparts a duty on the indemnitor to indemnify in a later action and provides sufficient incentive for indemnitors to assume defense. Likewise, an indemnitee's ability to settle is not hindered based on the position taken by this court. Had Crane Construction apportioned Wal–Mart's allegations of defective work and the amount of settlement allocated to that work when the global settlement was agreed upon and then made indemnification demands on defendants in accordance with the allocation, defendants would have no basis to challenge Crane Construction's claim for indemnification. The burden for failing to apportion the settlement must rest on Crane Construction.

### D. *Crane Construction's Litigation Costs*

Crane Construction also seeks to recover its litigation costs associated with defending against Wal–Mart's claims, as those costs are allocated to defendants. Because the court has ruled that the indemnification provision is valid, Crane Construction can proceed. Crane Construction's counsel acknowledged at oral argument that Crane Construction had not yet finalized its litigation costs claims and there are no facts in the record on which to even consider summary judgment. At trial, Crane Construction will have to prove that the costs are properly allocated to defendants and that the costs are reasonable. Defendants may present appropriate defenses.

### V. *CONCLUSION*

Crane Construction's motion for partial summary judgment (Docs. 86 and 87) is denied. The court neither invites nor encourages a motion for reconsideration. Any motion for reconsideration must comply with Fed.R.Civ.P. 59 and 60, D.Kan. Rule 7.3, and the standards set out in *Comeau v. Rupp,* 810 F.Supp. 1172, 1174 (D.Kan.1992). The motion may not exceed three pages in length, including supporting arguments and authorities, regardless of the number of points raised. A response shall also be limited to three pages. No replies may be filed.

· IT IS SO ORDERED.

---

dants and no evidence of the amount of the global settlement apportioned to the specific defects. A jury must determine whether WJE's after-the-fact interpretation of Wal–Mart's alleged defects, and whether they were in fact defects, was proper. Also, a jury must determine a reasonable settlement amount for claims based on defendants' work because it was not done during the global settlement.